# JUNE TERM, 1891.

John K. Fisken v. The Milwaukee Bridge & Iron
Works (a corporation).

*Contract—Assignment of money due—Lien—Priority.*

Defendant sublet the contract for erecting the piers of a bridge
which it had contracted to build, which work, when com-
pleted, was to be free from labor or material liens. Fifteen
per cent. of the contract price was reserved until the comple-
tion of the contract, and all payments might be refused until
the subcontractor presented full releases or waivers of claims
or liens of laborers and material-men. Provision was made for
completing the contract in case of default on the part of the
subcontractor. After commencing work the subcontractor
assigned the reserved percentage to secure a loan made to
enable him to prosecute the subcontract, and the assignee noti-
fied the main contractor of such assignment, and that it must
retain the percentage to the extent of the assignee's lien; to
which notice the main contractor replied that it could not
undertake to retain any sum from the subcontractor if by so
doing the work would be impeded or jeopardized. In a suit
by the assignee to recover from the contractor the reserved
percentage, which was less than the amount of the loan, it is
held:

*a*—That the plaintiff was in no better position than if he had
been the assignee of the subcontractor, and had brought suit
upon the contract; and that the defendant was entitled to set
up in defense any matter which it might have availed itself
of had such latter suit been brought, except, perhaps, volun-
tary payments to the subcontractor after notice of the assign-
ment.

*b*—That the fact that the defendant, as a further protection

199

to itself, in making payments to third parties, required the subcontractor's certificate of the correctness of the amounts, would not, of itself, preclude it from offsetting such payments, if shown to have been necessarily made in the prosecution of the work.

c—That the very object of the reservation was defendant's protection, and it was entitled to avail itself of the reserved fund to do what was actually necessary for the completion of the subcontract and its own protection, its lien thereon being prior to that of the plaintiff.

Error to Wayne. (Gartner, J.) Argued April 14, 1891. Decided June 5, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Bowen, Douglas & Whiting,* for appellant, contended:

1. Plaintiff took his assignor's interests and rights in the contract subject to all the rights and equities existing between Esson and the defendant; citing *Warner v. Whittaker,* 6 Mich. 133; *Bloomer v. Henderson,* 8 Id. 395; *Edson v. Gates,* 44 Id. 253; *Spinning v. Sullivan,* 48 Id. 5; *Seligman v. Ten Eyck,* 49 Id. 104; *Bank v. Carson,* 60 Id. 432; *Kinney v. Tabor,* 62 Id. 517; and he could recover precisely as Esson might have done had no assignment been made; citing *Howell v. Medler,* 41 Mich. 641.

2. Defendant, by the terms of the contract, could, and did, refuse to make payment to Esson until he presented full releases or waivers of claims or liens by all persons supplying material or labor to him; and it might on its failure to pay such claims apply all the money coming to him under the contract to that purpose, on presentation of certificates from Esson that a certain sum was due for such labor or material, and no assignment he might make could prevent defendant from so doing; citing *Hendrie v. Bank,* 49 Mich. 401; *Bank v. Mayor,* 58 How. Pr. 207 (affirmed in 27 Hun, 467); *Murphy v. Bank,* 30 Hun, 40; *Drake v. Harrison,* 69 Wis. 99.

3. Defendant had such an interest in having the laborers and material-men paid as would justify it in using Esson's money to pay off his indebtedness; citing Act No. 45, Laws of 1885; *Drake v. Harrison,* 69 Wis. 99.

*Barbour & Rexford,* for plaintiff, contended:

1. A "claim" is a challenge of the ownership of a thing which a man has not in possession, and which is wrongfully withheld by another; citing Bouv. Law Dict.; *Stowel v. Zouch,* Plowd. 359; *Cummings v. Lynn,* 1 Dall. 444; *Willing v. Peters,* 12 Serg. & R. 179; and it is therefore evident from the terms of the contract—

   *a*—That it gave defendant no right to pay Esson's debts.

   *b*—That it gave no right to refuse payment of the amount due Esson or his assignee, unless there were *liens* for labor performed or material furnished.

   *c*—That, it being matter of defense, it devolved on defendant to show that there were such liens, which it had satisfied or might be compelled to satisfy.

2. There is no evidence that there were any such liens, and there are three very good reasons why such liens could not have existed:

   *a*—Because the mechanic's lien, under the statutes of this State, only attaches under contracts performed on land, and then only to the land-owner's actual interest; citing *Stout v. Sawyer,* 37 Mich. 313; *Wagar v. Briscoe,* 38 Id. 587.

   *b*—This was work performed on and material furnished for a bridge over a navigable stream; and if it is claimed that the city of Detroit is the owner of the land at the approaches of the bridge to the channel bank of the river, the answer is that a mechanic's lien cannot attach to public or city property; citing Phillips, Mech. Liens, §§ 179, 180.

   *c*—Supposing a lien could have been maintained, after the assignment it could only be to the extent of the balance due Esson, and could not affect the 15 per cent. drawback, which belonged to plaintiff; and after the assignment no lien could be placed on the property that would defeat the assignee's right to the money assigned; citing *Lauer v. Dunn,* 52 Hun, 191.

3. Without some provision in the contract to that effect, defendant would not be authorized to pay Esson's debts, even though interested in having them paid. The case of *Drake v. Harrison,* 69 Wis. 99, does not decide that the mere interest of a contractor in having a subcontractor's debts paid is sufficient authority to the contractor to make the payments. In that case the contract provided that the contractor should have the right to pay the laborers employed by the subcontractor out of the money due on the contract.

*Bowen, Douglas & Whiting,* for appellant, in their supplemental brief, contended:

1. Webster says that a claim is "a demand of right or supposed right; a calling on another for something due or supposed to be due;" and usually and commonly it imports the assertion, demand, or challenge of something as a right, or it means the thing thus demanded or challenged; citing *Fordyce v. Godman,* 20 Ohio St. 14; *Scott v. Perley,* 98 Mass. 511; *Douglas v. Beasley,* 40 Ala. 147; *Prigg v. Com.,* 16 Pet. 615.

McGRATH, J. Defendant entered into a contract with the city of Detroit for the construction of a bridge, and on November 14, 1887, John Esson entered into a subcontract with defendant for the construction of the piers to said bridge. Esson's work was to be finished July 18, 1888, and, when completed, was to be entirely freed and cleared of any lien for labor or material; and the contract provided that all subcontractors of said Esson must "have first waived their right to any claim for lien before the payments" therein provided for should be required to be made. It further provided that payment should be made by monthly estimates to the amount of 85 per cent. of the amount of work done and material furnished, and the balance of 15 per cent. at the full completion of the contract; that defendant might at any time refuse to make any payment to said Esson until he should have presented full releases or waivers of claims or liens by all persons supplying material or labor to him; that, if said Esson should neglect or delay the performance of his agreements therein contained to such an .extent as to hinder or delay any other part of the construction of said bridge, or in case he should provide such material or workmanship as should be notoriously or obviously unfit with respect to compliance with the plans and specifications of the contract, then, or in either of such cases, said first party (defendant herein) should have the right and authority to .rescind and annul the contract, and to forbid said Esson from entering upon the premises occupied by said work, and might then complete and

finish the contract of said Esson, regardless of the covenants herein contained, but should be obliged to pay said Esson such reasonable compensation for his work and material furnished as should be right, if the same should be used by said first party; provided, however, that any actual damage said first party might suffer by reason of said Esson thus failing to comply with the contract might first be deducted from the moneys so as aforesaid to be paid said Esson. The contract provided that the covenants therein contained should bind the said parties mutually, and their respective heirs, executors, successors, or assigns.

Work was commenced under this contract, and on February 13, 1888, Esson entered into a written agreement with plaintiff, which recited the existence of the aforesaid contract; the loan to Esson by plaintiff of the sum of $5,500 "to enable Esson to prosecute the said subcontract;" the agreement by Esson to repay the said sum on or before August 1, 1888; and provided that,—

"If default be made by the said Esson in repayment of the said sum of five thousand five hundred dollars on the day hereinbefore appointed for the repayment thereof, then the said Esson hereby gives to the said Fisken a first charge upon the drawback or sum of 15 per cent. on the contract price of the said work so to be done and performed by him under the said subcontract, and such first charge against the said drawback is hereby given and assigned to the said Fisken as further collateral security for the said advance."

Notice of this assignment, dated Toronto, June 12, 1888, was mailed to defendant, and received by it June 18, 1888. The notice recited the contract, and concludes as follows:

"Now, therefore, I, the said John Kerr Fisken, beg to notify you that I claim, by virtue of the said agreement, a first charge and lien upon the drawback or sum of fifteen per cent. on the contract price of the said

work to be done and performed by the said John Esson under the said subcontract with you, to the extent of five thousand five hundred dollars, principal, and all interest, commission, or incidental expenses which may be due to me in respect to the same; and I also further notify you to retain the said drawback as aforesaid on my behalf, and not to make payment of the same, or any part thereof, to the extent of my said charge and lien to any person or persons, corporation or corporations, without my written order and consent."

Defendant on the same day acknowledged the receipt of this notice, and replied as follows:

"We in the mean time have advanced Mr. Esson considerable money for the purpose of carrying on the work, and should the 15 per cent., or any portion of it, be required to complete the work, we will have to pay it to him, and cannot undertake to retain any sum from Mr. Esson that might jeopardize or impede the progress of the work."

Plaintiff, as assignee of John Esson, sued to recover the 15 per cent. which was to be reserved under the contract. Upon the trial, plaintiff showed that the work done by Esson under the contract amounted to $26,580.57; that 15 per cent. upon that amount was $3,987.07; and that interest thereon from July 18, 1888, to the time of the trial was $398.70,—making a total of $4,385.77. It did not appear that Esson's contract had been completed. Defendant showed that $12,809.58 had been paid to Esson directly, and that $24,700 had been paid on account of Esson's work, and that there yet remained unpaid over $7,000 to stone-cutters and other parties for work done under the Esson contract. Defendant sought to show that it had been compelled to advance this sum of $24,700 to material-men and for labor, in order to complete the structure within the time provided by its contract with the city of Detroit, and to protect itself under said contract; but the court rejected this testimony,

and directed a verdict for the plaintiff for the full amount claimed.

It did not appear just when this $24,700 was paid out by defendant, nor did it appear just what portion of that sum, if any part, was paid after notice of the assignment. It was admitted, however, that this sum had been paid out by defendant, and, if so, it left but $1,880.57 of a balance in defendant's hands, under the Esson contract, irrespective of the question as to whether or not defendant was entitled to retain that sum until Esson should produce releases for all claims due his subcontractors for labor and material. It appeared that defendant had required from Esson certificates of the correctness of the amounts paid out by it to third parties for labor and material, and the court held that payments made under such certificates were equivalent to payments to Esson.

Plaintiff was in no better position than if Esson's contract had been assigned to him, and he had brought suit thereon, and defendant was entitled to set up in defense any matter which it might have availed itself of had suit been brought under the contract, except, perhaps, voluntary payments to Esson since the notice of the assignment. The fact that defendant, as a further protection to itself, in making payments to third parties, required Esson's certificate of the correctness of the amounts, would not, of itself, preclude defendant from offsetting such amounts, if it was shown that such payments became actually necessary in the conduct of the work. The very object of this reservation of 15 per cent. was defendant's protection, and it was entitled to avail itself of this reserve to do what was actually necessary for the completion of Esson's contract and its own protection. Its lien upon that reserve was prior to that of plaintiff. Plaintiff did not take the assignment of the contract, and had not chosen to assume its control, but had left

that with Esson. Defendant was not bound to protect the reserve at its own expense.

Defendant should have been allowed to show when, and under what circumstances, the payments by it were made, and, so far as they were properly made, it was entitled to offset them against the amount of Esson's work.

The judgment will be reversed, with costs to defendant, and a new trial ordered.

The other Justices concurred.