## FARMERS' NATIONAL BANK *v.* WOODELL.

[61 Pac. 837 ; 65 Pac. 520.]

PRELIMINARY EXAMINATION OF EXPERT WITNESS.

1. It is always the duty of the trial court to determine whether a witness offered as an expert is properly qualified, and ordinarily the conclusion will not be disturbed, though the appellate court has the power of review if it appears that the lower court did not act with discretion ; thus, where the preliminary examination of a witness showed that he cultivated sugar beets in 1898, and observed their growth in 1899, a ruling

that he was competent to state when they should be thinned, and how many tons could be raised per acre, will not be disturbed.

### COMPETENCY OF EXPERT EVIDENCE.

2.  Under Hill's Ann. Laws, § 682, providing that a witness "can testify of those facts only which he knows of his own knowledge," except as otherwise provided; and section 706, subd. 9, declaring that he may express an opinion on questions "of science, art or trade, when he is skilled therein,"—expert evidence is admissible as to when sugar beets should be thinned, and as to the number of tons that can be raised per acre.

### ORDER OF PROOF — SHOWING COMPETENCY OF EXPERT WITNESS.

3.  Under Hill's Ann. Laws, § 830, providing that "the order of proof shall be regulated by the sound discretion of the court," error in admitting expert evidence before the competency of the witness is established is cured by subsequent testimony showing his competency.

### COMPETENCY OF EXPERT WITNESS.

4.  Where a witness' examination showed that he had two years' experience raising sugar beets, that he had known defendant's farm for thirty-five years, and that he knew the part planted to sugar beets, he was competent to testify that it was suitable for such use.

### INSTRUCTIONS MUST BE CONSIDERED AS A WHOLE.

5.  In passing on a single instruction the entire charge must be considered, and unless it appears that the jury were or might have been misled, verbal inaccuracies or careless expressions will not be cause for reversal: *Smitson* v. *Southern Pac. Co.*, 37 Or. 74, approved.

### ASKING INSTRUCTION — RIGHT TO PRESENT THEORY OF CASE.

6.  A party who has presented evidence in support of the issues he has raised is entitled to have the jury instructed properly on his theory of the case, but he should prepare an instruction embodying his claims, or error cannot be assigned on the instruction given: *Schoellhamer* v. *Rometsch*, 26 Or. 394, cited.

### SET-OFF — DAMAGES — INSTALLMENT.

7.  Where plaintiff's assignor contracted to raise defendant's crop of sugar beets, plaintiff's claim for an installment of the contract price was subject to a set-off of defendant's damage, existing at the maturity of the installment, and caused by the assignor's failure to properly care for the crop.*

---

*NOTE.—On the question of set-off against assigned claims, examine the notes to *Bradley* v. *Thompson Smith's Sons*, 23 L. R. A. 305, 310, 39 Am. St. Rep. 565, 571.—REPORTER.

ERRONEOUS INSTRUCTIONS — WHEN HARMLESS.

8. Where an improper instruction, contradicting prior correct instructions, did not mislead the jury, the error is not ground for reversal.

From Union: ROBERT EAKIN, Judge.

Action by the Farmers' & Traders' National Bank of La Grande, Oregon, against William Woodell. There was a judgment for the defendant for $1, from which plaintiff appeals.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. D. Slater.*

For respondent there was a brief over the names of *Thos. H. Crawford* and *C. E. Cochran,* with an oral argument by *Mr. Crawford.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an action to recover an installment alleged to be due under a contract entered into March 29, 1898, between the defendant and Yee Sing & Company, by the terms of which he agreed to plow, put into a good state of cultivation, and seed 100 acres of suitable land in Union County, Oregon, to sugar beets, and, as soon as they were up and ready for cultivation, to surrender the premises to Yee Sing & Company, who, in the proper season, were to furnish sufficient labor to care for said crop in a good and husbandmanlike manner, as directed by the agricultural superintendent of the Oregon Sugar Company, causing the beets to be properly thinned, weeded, and cultivated while growing, to top them when matured, and load them upon wagons to be furnished by the defendant, who, in consideration thereof, agreed to pay them $1.15 per ton for all the beets grown on said land, as follows: $5 per acre at the expiration of six weeks after entering upon the performance of the work,

$2.50 per acre September 1, 1898, and the remainder when the beets were delivered and weighed at La Grande. It is alleged in the complaint that Yee Sing & Company took possession of said land, and entered upon the performance of their part of the contract, about May 1, 1898, and within six weeks from that time they assigned the first installment due under the agreement to the bank, plaintiff herein, which, on June 23, 1898, notified defendant thereof, and on July 8, 1898, demanded of him the payment of $500 due under the contract, but that he neglected to pay any part thereof.

The defendant, after denying the material allegations of the complaint, set up separate defenses, in substance, as follows: (1) That when the beets were up and ready for cultivation he tendered the possession of said land to Yee Sing & Company, who for more than ten days thereafter refused to enter upon the performance of their agreement, and that after taking possession of said premises they neglected to furnish sufficient laborers to care for said crop in a good and husbandmanlike manner, or as directed by said superintendent, in consequence of which the first payment of $5 per acre never became due or payable to plaintiff's assignor; (2) that in order successfully to grow sugar beets, or as required by the terms of said contract, it is necessary that the young plants should be thinned not later than ten days after they are out of the ground, and for six weeks from that time they must be constantly hoed and weeded, requiring one laborer to each two acres of land; that about May 18, 1898, defendant had growing, ready for thinning and weeding, 100 acres of sugar beets, on which day he so notified Yee Sing & Company, to whom he tendered, but they refused to take possession, of said premises, and did not enter upon the performance of their contract until May 28, 1898, and thereafter they refused, though requested to do so, to furnish a sufficient number of laborers to properly care for and cultivate said crop, in consequence of which the beets were in-

jured, and the quantity thereof curtailed at least four tons
to the acre, to defendant's damage in the sum of $1,200;
(3) that on June 22, 1898, Yee Sing & Company abandoned
said contract, and permitted their employees to quit; where-
upon defendant was compelled to engage laborers, and to
pay them the sum of $500, to cultivate the crop, so as to
avoid an entire failure thereof, and that, in consequence of
the neglect of Yee Sing & Company in this particular, he
was damaged in the sum so expended for labor; (4) that
about June 23, 1898, and prior to the service upon defendant
of any notice of said assignment, the employees of Yee Sing
& Company informed him that unless they were paid weekly
for their labor they would abandon the cultivation of said
beets; whereupon he entered into a contract with them, with
the consent of Yee Sing & Company, by which he agreed to
pay said employees for the labor they had theretofore per-
formed, and that which they might thereafter render, until
the beets were thinned, weeded, and cultivated, not exceed-
ing the amount of said first payment, and that in pursuance
of such agreement he paid said laborers the sum of $500.
The reply having put in issue the allegations of new matter
in the answer, a trial was had, resulting in a judgment for
the defendant in the sum of $1, and the plaintiff appeals.

1. It is contended by plaintiff's counsel that the court
erred in permitting defendant, over their objection and ex-
ception, to express an opinion concerning a subject-matter
of which he had no superior knowledge or practical expe-
rience, and upon which the jury, as ordinarily intelligent
men, were capable of forming a correct judgment without
such assistance. The defendant, appearing as a witness in
his own behalf, having testified that he had had no experi-
ence in raising sugar beets until 1898, and that his knowl-
edge of the cultivation of these plants in 1899 was derived
from observation, was asked, "From your observation, when
should the thinning of beets commence, in order to get the

best results, with reference to the growth of the beet and
the number of leaves and the size of the leaves ?" to which he
replied: "As I understand from what little experience I
have had, when the fourth leaf on the plant is started, it is
ordinarily large enough to thin; and that starts pretty
young,—quite small. Q. From your observation and knowl-
edge of growing beets last year and this, if your beets there,
upon that place, in 1898, had been thinned, weeded out,
hoed, and properly cultivated by Yee Sing & Company, in
accordance with the terms of their contract, how many tons
of beets to the acre would you have had? A. I would have
had at least seven tons to the acre, according to my estima-
tion." The statute provides that a witness can testify con-
cerning those facts only which he knows of his own knowl-
edge, except that he may give an opinion respecting a ques-
tion of science, art, or trade, when he is skilled therein:
Hill's Ann. Laws, § 682; Id., § 706, subd. 9. The admis-
sibility of expert testimony is a question of law, which the
court must determine by considering whether the subject-
matter to which it relates is one of science, art, or trade, and
therefore beyond the common experience of ordinary men,
and its conclusion thereon, if erroneous, is reviewable on
appeal: Rogers, Exp. Ev. (2 ed.), § 9; 12 Am. & Eng.
Enc. Law (2 ed.), 423. The rule is general that opinion
evidence respecting a subject-matter about which persons
of common knowledge, having no peculiar training or spe-
cial study, are capable of forming accurate opinions and de-
ducing correct conclusions, is inadmissible: *State* v. *An-
derson,* 10 Or. 448; *Fisher* v. *Or. Short Line Ry. Co.,* 22
Or. 533 (30 Pac. 425, 16 L. R. A. 519); *Johnston* v. *Or.
Short Line Ry. Co.,* 23 Or. 94 (31 Pac. 283); *Hahn* v.
*Guardian Assurance Co.,* 23 Or. 576 (37 Am. St. Rep. 709,
32 Pac. 683); *Nutt* v. *Southern Pac. Co.,* 25 Or. 291 (35
Pac. 653); *State* v. *Robinson,* 32 Or. 43 (48 Pac. 357).
Whether a witness offered as an expert possesses the neces-

sary qualifications to render him competent as such is a question of fact which the court must determine from a preliminary examination concerning his knowledge, experience, or skill respecting the subject-matter in relation to which his opinion is desired, and, if it reasonably appear therefrom that he is so qualified to form an intelligent opinion, he is competent; but the range and extent of such examination, however, is not subject to review on appeal, except in case of an abuse of discretion: *Oregon Pottery Co.* v. *Kern,* 30 Or. 328 (47 Pac. 917); *City of Ft. Wayne* v. *Coombs,* 107 Ind. 75 (57 Am. Rep. 82, 7 N. E. 743); *Fayette* v. *Chesterville,* 77 Me. 28 (52 Am. Rep. 721); *Perkins* v. *Stickney,* 132 Mass. 217; *Stillwell Mfg. Co.* v. *Phelps,* 130 U. S. 520 (9 Sup. Ct. 601). The defendant's preliminary examination disclosed that he cultivated sugar beets in 1898, and observed their growth in 1899, and, the plaintiff having offered no testimony tending to show that his examination revealed a want of such qualification, no error was committed in holding him competent.

2. This conclusion brings us to a consideration of the more important question, as to whether the stage of development at which the cultivation of sugar beets should be commenced, and the effect of a failure to thin, weed, and hoe such plants within a certain time after the leaves appear above the surface of the ground, are matters of science, art, or trade, and hence beyond the common intelligence of ordinary men. If it be conceded that sugar beets demand the same care and attention that the edible variety requires, and that the cultivation of the latter kind is generally understood by farmers, it cannot be assumed that the men composing the jury were all engaged in tilling the soil. An ordinary farmer, though he may never have grown sugar beets, might know from analogy when their cultivation should be commenced, but, unless he has raised or had an opportunity to observe the growth of the saccharine variety, we think it

safe to say that he could not know how many tons could be raised on an acre if the land had received the greatest care, and the plants the closest attention; so that opinion evidence respecting the quantity of sugar beets that might be raised on a certain area of land would be necessary, and hence admissible, to enlighten even a jury composed of farmers, unless the members thereof had experience in raising or observing the growth of such plants. In *Zachary* v. *Swanger*, 1 Or. 92, damages were sought to be recovered for the violation of an agreement to sow to wheat and rye a farm which the tenant permitted to produce a volunter crop of oats, and in speaking of the method of ascertaining the damages thus sustained, Mr. Chief Justice WILLIAMS says: "Farmers acquainted with the land in question can tell about how much it would produce with proper cultivation, and there is no greater danger of mistake here than in any other case where an exercise of judgment is necessary in the estimation of damages." In *Young* v. *O'Neal*, 57 Ala. 566, a farmer, on his preliminary examination touching his qualification as an expert, testified that he had used "soluble Pacific guano," a fertilizer, for which the defendant gave a promissory note for the collection of which the action was instituted; that he had experimented with it on all kinds of garden and field plants and crops, and had closely and critically watched its effects and results; but was not permitted to express an opinion concerning the proper methods of using it, or what would prevent it from acting beneficially; and it was held that the court erred in this respect.

In *Phillips* v. *Terry*, 3 Abb. Dec. 607, an action was brought to recover damages for injuries resulting from backing water on a meadow, and the plaintiff, having testified in regard to the injury sustained thereby, was asked, "Taking that hay as it stood there, what would it yield to the acre?" and, having been permitted to answer the question, it was held that no error was thus committed, the court say-

ing: "The farmer, acquainted with the subject-matter of such an inquiry as this under consideration, is an expert, and, unless the witness has the peculiar knowledge which constitutes him an expert, his opinion would be excluded." In *Harpending* v. *Shoemaker,* 37 Barb. 270, a witness who was then a merchant, but had been engaged in farming, having testified respecting the quantity of buckwheat grown on certain land; that he had examined the straw after-the grain was threshed,—and that he thought it was not threshed clean,—was not permitted to answer the question, "How much less buckwheat was there than there would have been if the same had been properly threshed?" and it was held that an error was thereby committed. In *Seamans* v. *Smith,* 46 Barb. 320, it was held that, a witness being a farmer, his experience as such rendered him competent to answer the question, "What portion of the buckwheat the defendant's horses destroyed, in the fall of 1861," and that an objection to such interrogatory was properly overruled. In *Barnum* v. *Bridges,* 81 Cal. 604 (22 Pac. 924), it was held that no error was committed in permitting a witness, who, as a farmer and logger, had ordinary knowledge of timber land, to state what, in his judgment, it would cost to clear off such land, though he might never have actually cleared any land just like that in question. In *Isaacs* v. *McLean,* 106 Mich. 79 (64 N. W. 2), an action of trover for a quantity of hay which had been cut from a given acreage, but not weighed at the time of the conversion, it was held that a witness who had shown himself competent might be asked to state the average crop per acre for that season upon the premises in question. So, too, in *Buffum* v. *Harris,* 5 R. I. 243, it was held that a farmer who testified that he had been engaged in draining lands for the purpose of rendering them cultivatable was competent as an expert, and might express an opinion that the land in controversy required draining to fit it for cultivation. We think it is apparent

from these excerpts that the testimony of the defendant respecting the time when the cultivation of the sugar beets should have been commenced, and the quantity which could have been raised on his land, properly cultivated, was admissible.

3.   W. G. Hunter, appearing as defendant's witness, testified that, having been acquainted with the latter's farm for 35 years, he knew that part of it which was planted to beets in 1898, and that it was difficult to say what the character of such land was for beet raising, except by experience. He was then asked, "From your experience in raising sugar beets in Grande Ronde Valley?"   An objection to this interrogatory, on the ground that the witness had not proven himself competent to express an opinion on the subject-matter, having been overruled, he answered, "I should judge that it was a good quality of land for beet growing."   The witness having thereafter said that he had two years' experience in raising sugar beets, the court refused to strike out such testimony, and the plaintiff excepted to its action in this respect.   It is contended that the court erred in permitting the witness to express an opinion concerning the suitability of defendant's land for raising sugar beets, and in refusing to take from the consideration of the jury his testimony respecting his experience in raising such vegetables.   The preliminary examination of this witness had not disclosed, at the time the objection to the question was interposed and overruled, that he was competent to express an opinion respecting the character of defendant's land for raising sugar beets, and the question is whether such testimony could be supplied after the opinion had been expressed. That the competency of the witness should have been established before he testified concerning the character of the land must be admitted:   Rogers, Exp. Test. (2 ed.), § 15. But, having thereafter proven that he was qualified to answer the question, the opinion which he had expressed

became relevant, and, as the order of proof is regulated by
the sound discretion of the court (Hill's Ann. Laws, § 830),
any error originally committed by permitting the witness
to express an opinion was subsequently cured by the intro-
duction of testimony tending to show his competency.

4. It is argued, however, that Hunter was not a chemist,
who, having analyzed the soil, was competent to express an
opinion as to its elements, but that, having had only two
years' experience in raising sugar beets, he was not qualified
to express an opinion regarding the character of the land in
question. "An expert," says Mr. Rogers in his work on
testimony of that character (2 ed. § 1), "is one who is skilled
in any particular art, trade, or profession, being possessed
of peculiar knowledge concerning the same." To the same
effect, see *Pendleton* v. *Saunders,* 19 Or. 9 (24 Pac. 506).
According to this definition, Hunter was not an expert, and
could not be allowed to express an opinion upon the testi-
mony of other witnesses, nor in answer to a hypothetical
case, but he could, from his own personal knowledge of the
facts, express an opinion, when it became necessary to do
so by reason of his inability to so describe the facts as to
enable the jury to draw an intelligent conclusion therefrom:
Rogers, Exp. Test. (2 ed.), § 3. The rule is well settled that
witnesses, except upon questions of skill and science, are not
allowed to give their opinions as evidence when they have
no personal knowledge of the facts of the case: *Zachary* v.
*Swanger,* 1 Or. 92. In *Sickles* v. *Gould,* 51 How. Prac. 22,
which was an action of trespass for the destruction of corn
by defendant's cattle, a witness having testified that he was
well acquainted with the land in question, which he had
known for 35 years, having lived within one-half mile of it,
and knew what it would produce, his knowledge being de-
rived from what he observed as a neighbor living near it,
he was permitted to answer the following question, "How
many bushels of corn would there have been on the place

that was damaged?" and it was held that no error was thereby committed, the court saying: "A knowledge derived from observation, if of the requisite degree to enable a witness to speak intelligently, would be sufficient." It is insisted that Hunter's testimony did not disclose that his experience in raising sugar beets was limited to soil similar in character to defendant's nor that such experience was confined to the vicinity in question. The preliminary question propounded to this witness related to his experience in Grande Ronde Valley, in which defendant's farm is situated, and, as he testified that he had known the latter's land about 35 years, we think the point insisted upon without merit. Hunter may not have been able to make a chemical analysis of the constituent elements of the soil which form the surface of the defendant's farm, but he undoubtedly knew from his long personal observation, and from having cultivated sugar beets two years, that it was suitable to the growth of such plants, and no error was committed in permitting him to express an opinion concerning such fact.

Plaintiff's counsel assigned other alleged errors relating to the competency of witnesses and the admissibility of testimony of like character, but we think the legal principles insisted upon have been examined, and such alleged errors will not be further considered.

5. The court instructed the jury that "the plaintiff in taking an assignment of the contract, if it was assigned, takes it subject to the off-sets and defenses that existed, or could have been pleaded, against Yee Sing & Company," and, an exception having been taken thereto, it is contended that such instruction was improper. The statute regulating such transfers provides that, in the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of or before notice of the assignment: Hill's Ann.

38 OR.—20.

Laws, § 28. An examination of the instruction complained of will disclose that the court did not limit the time of interposing such off-sets and defenses as the defendant might invoke against Yee Sing & Company to the time of or before notice of the assignment. Considering the charge of the court in its entirety, however, it is evident that the jury were not misled by this instruction; the rule being that whenever the instructions, considered as a whole, are substantially correct, and could not have misled the jury, the judgment will not be reversed because some instruction, considered alone, may be subject to criticism: *State* v. *Anderson,* 10 Or. 448; *Wellman* v. *Or. Short Line Ry. Co.,* 21 Or. 530 (28 Pac. 625); *State* v. *Hansen,* 25 Or. 391 (35 Pac. 976, 36 Pac. 296); *Matlock* v. *Wheeler,* 29 Or. 64 (40 Pac. 5, 43 Pac. 867); *State* v. *Bartmess,* 33 Or. 110 (54 Pac. 167).

6. It is insisted that the court erred in giving the following instruction, to which an exception was saved, to wit: "But if Yee Sing & Company did not take possession of said land for ten days after the beets were ready to cultivate and thin, or during said forty-two days after entering upon the said work Yee Sing & Company failed to furnish sufficient men to do the work in the proper time and manner, or failed to enter upon the work at the proper time, for the best results, then, for such default by Yee Sing & Company, defendant is entitled to set off against the first payment of the contract price any damage that he suffered by reason thereof." It is argued that this instruction is faulty, in that it does not make any reference to the work having been done under the direction of the agricultural superintendent of the Oregon Sugar Company. It will be remembered that the contract entered into between the defendant and Yee Sing & Company required the latter to furnish sufficient labor to care for the sugar beets in the proper season in a good and husbandmanlike manner, as directed by the agri-

cultural superintendent of the Oregon Sugar Company. If the instruction complained of did not fully state the hypothetical facts involved, or clearly explain the legal principle applicable thereto, it was incumbent upon the party objecting to that portion of the charge to prepare an instruction which would meet these requirements, and request the court to give the same to the jury: *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309); *Nickum* v. *Gaston,* 24 Or. 380 (33 Pac 671, 35 Pac. 31); *Schoellhamer* v. *Rometsch,* 26 Or. 394 (38 Pac. 344). Plaintiff's counsel, attempting to comply with this rule, requested the court to give the following instruction: "If you believe from the evidence that Yee Sing & Company performed the work under the direction of the agricultural superintendent of the Oregon Sugar Company, and that he during the performance of their work made no objection to the manner of doing the same, you have the right to consider that the work was done in substantial compliance with the contract." The court having refused to give this instruction, an exception was saved, and it is contended that an error was committed in this respect. It is argued that plaintiff is entitled to have the jury instructed upon its theory of the case, whenever there is admitted at the trial evidence tending to prove such theory. The bill of exceptions states that testimony was introduced tending to show that the agricultural superintendent of the Oregon Sugar Company and the defendant complained to Yee Sing & Company that they were not furnishing a sufficient number of employees to cultivate the sugar beets properly, and requested that more laborers be furnished. It is also stated that testimony was introduced tending to show that said laborers entered upon the performance of the contract, and continued the cultivation of the crop under the direction of said superintendent, until July 2, 1898, without complaint or objection by the defendant. A party to an action who has given evidence tending to sustain the

issues on his part is entitled to have the jury instructed on his theory of the case: *Fiore* v. *Ladd,* 25 Or. 423 (36 Pac. 572) ; *Barnhart* v. *Ehrhart,* 33 Or. 274 (54 Pac. 195). It will thus be seen that, if the instruction so refused embodies all the hypothetical facts demanded, error could probably have been successfully predicated upon the court's action in the matter. An examination of such instruction will show that it does not require the jury to find, as a condition precedent, that the agricultural superintendent of the Oregon Sugar Company was aware of the manner in which Yee Sing & Company were performing the work under their contract with defendant. Unless the superintendent knew how the crop of beets was being cultivated, his silence could not be construed into an approval of the conduct of Yee Sing & Company. The failure to make objection when work is being done which does not comply with the terms of a contract is in the nature of a ratification of the change in the agreement, but there can never be a ratification without full knowledge (Wharton, Ag., § 72), and, the proposed instruction being faulty in this respect, no error was committed in refusing to give it.

7. The court gave the following instructions: "If Yee Sing & Company performed the terms of the contract substantially in the manner of the work and the time of its performance, prior to the maturity of the said first payment, then I instruct you that defendant Woodell cannot claim credit or off-set in this action for any payments made by him to Yee Sing & Company, or its agents or employees, after he had notice of the assignment of the said first payment to plaintiff." "Nor can defendant, Woodell, claim credit or off-set for any payments made by him after notice of such assignments, if any, unless it was necessary for him to make such payments in order to get the work done, as contemplated by the terms of the contract. But if Yee Sing & Company did not substantially comply with said contract

prior to the maturity of said first payment, either in the manner of the work or the time of its performance, then Mr. Woodell had a right to have the work done himself, and is entitled to off-set in this action any moneys necessarily paid for that purpose." Exceptions having been taken to these instructions, it is maintained that they were erroneously given.

The bill of exceptions states, in effect, that testimony was introduced at the trial tending to show the following facts: That on May 18, 1898, the said sugar beets were up and growing on 100 acres of defendant's land, and should have been thinned and weeded within ten days from that time, to accomplish which required from 40 to 50 laborers daily; that Yee Sing & Company took possession of said land about May 28, 1898, with 22 laborers, and from that time until July 1, 1898, there were not less than 11 nor more than 32 laborers daily employed in cultivating said beets, which was not completed until about July 21, 1898, and that, in consequence of the failure of Yee Sing & Company to comply with the terms of their contract in these respects, the defendant was damaged from $500 to $1,000; that plaintiff advanced money to Yee Sing & Company, taking as security therefor an assignment of the first payment due under the contract entered into between them and the defendant, who on June 23, 1898, was notified by plaintiff's agent that said installment of $500 had been assigned to his principal; that on July 2, 1898, the laborers employed by Yee Sing & Company quit work, refusing longer to continue cultivating defendant's beets unless they were paid for their labor, whereupon the defendant, in order to save his crop from being destroyed, was compelled to guaranty to said laborers the payment of $250 for the labor which they had performed, and to assume the payment of $250 for the work which they might thereafter render, and in consideration of such guaranty and assurance said laborers resumed work, and com-

pleted the cultivation of defendant's crop, for which he paid them, with the consent of Yee Sing & Company, the sum of $500, after having received notice of the assignment to plaintiff by Yee Sing & Company of that amount.

It is contended by plaintiff's counsel that the defendant, having been notified of the assignment by Yee Sing & Company, could not thereafter make payments to their employees to plaintiff's prejudice; while defendant's counsel insist that Yee Sing & Company could not transfer any greater interest in the chose in action than they possessed, and that the defendant, having been compelled to pay to said laborers the sum of $500 in consequence of the failure of Yee Sing & Company to keep their contract, is entitled to off-set his damage against plaintiff's demand.    It is admitted that, if the defendant had made the payment directly to Yee Sing & Company afer he was notified of the assignment, such payment would not·relieve him from liability to the plaintiff : 2 Am. & Eng. Enc. Law (2 ed.), 1077 ; *Andrews* v. *Beecker,* *1* Johns. Cas. 411 ; *Sanders* v. *Soutter,* 136 N. Y. 97 (32 N. E. 638) ; *Eastman* v. *Wright,* 6 Pick. 316 ; *Parker* v. *Kelly,* 10 Smedes & M. 184.  So, too, if Yee Sing & Company had earned the first installment at the time they assigned it, and defendant had notice thereof, he could not thereafter pay any portion of the sum so due to the employees of Yee Sing & Company, to the prejudice of the plaintiff.:    *McCloskey* v. *City of San Francisco,* 66 Cal. 104 (4 Pac. 1092). In *Fisken* v. *Milwaukee Bridge Works,* 86 Mich. 199 (49 N. W. 133), the defendant, having enterd into a contract with the City of Detroit for the construction of a bridge, sublet the building of the piers thereof to one Esson, agreeing to pay him monthly 85 per cent of the work done or material furnished, and the remainder of the contract price upon the completion of the work; reserving the right, however, to refuse at any time to make payments to Esson until he should have presented full releases or waivers of claims or liens by

all persons supplying material to, or performing labor for, him. Esson having commenced the construction of the piers, plaintiff loaned him $5,500 to enable him to complete his sub-contract, taking as security therefor an assignment of the 15 per cent of the contract price to become due on the completion of the piers. The defendant, having been notified of such an assignment, refused to pay plaintiff any part of the drawback, amounting to the sum of $4,385.77; whereupon an action was instituted to recover the same, at the trial of which the defendant sought to show that the work done and material furnished by Esson under the contract amounted to $26,580.57, on account of which there had been paid the sum of $24,700,—a part therof having been paid after notice of the assignment,—and that there yet remained about $7,000 due to stonecutters and other persons for work done on Esson's contract; but the court, having rejected the testimony so offered, directed the jury to return a verdict for plaintiff in the full amount demanded, and, judgment having been rendered thereon, the defendant appealed. In reversing the judgment, Mr. Justice McGRATH, speaking for the court, says: "It did not appear just when this $24,700 was paid out by defendant, nor did it appear just what portion of that sum, if any part, was paid after notice of the assignment. It was admitted, however, that this sum had been paid out by defendant, and, if so, it left but $1,880.57 of a balance in defendant's hands, under the Esson contract, irrespective of the question as to whether or not defendant was entitled to retain that sum until Esson should produce releases for all claims due his sub-contractors for labor and material. It appeared that defendant had required from Esson certificates of the correctness of the amounts paid out by it to third parties for labor and material, and the court held that payments made under such certificates were equivalent to payments to Esson. Plaintiff was in no better position than if Esson's contract had been

assigned to him, and he had brought suit thereon, and defendant was entitled to set up in defense any matter which it might have availed itself of had suit been brought under the contract, except, perhaps, voluntary payments to Esson since the notice of the assignment. The fact that defendant, as a further protection to itself, in making payments to third parties, required Esson's certificate of the correctness of the amounts, would not, of itself, preclude defendant from off-setting such amounts, if it was shown that such payments became actually necessary in the conduct of the work. The very object of this reservation of 15 per cent was defendant's protection, and it was entitled to avail itself of this reserve to do what was actually necessary for the completion of Esson's contract, and its own protection. Its lien upon that reserve was prior to that of plaintiff. Plaintiff did not take the assignment of the contract, and had not chosen to assume its control, but had left that with Esson. Defendant was not bound to protect the reserve at its own expense. Defendant should have been allowed to show when, and under what circumstances, the payments by it were made, and, so far as they were properly made, it was entitled to off-set them against the amount of Esson's work."

In *James v. Cincinnati, etc., Ry. Co.*, 2 Disn. 261, it is held that, if the subject-matter of the contract be left within the power and under the control of the assignor, the risk of its being impaired or destroyed, so as to defeat the performance, is assumed by the assignee, the court saying: "The defense is, in substance, a want of ability on the part of one of the contracting parties to comply with the terms of the contract. If this want of ability had been caused by the defendant, after notice of the assignment, then the assignee might justly complain of such an act as a fraud upon his rights. But how can it be claimed that the assignment and notice devolved upon the defendant the duty of so supervising and controlling the acts of the assignor that a continued

ability to perform should exist? It would be for the assignee, and not the defendant, to protect and secure rights depending upon the conduct of the assignor." The plaintiff, as assignee of Yee Sing & Company, stands in the place of the assignor, and may recover what the latter would have recovered but for the assignment, and no more: *Sanders* v. *District of Columbia,* 20 Ct. Cl. 337. In a note to the case of *Bradley* v. *Thompson Smith's Sons,* 98 Mich. 449 (39 Am. St. Rep. 565, 57 N. W. 576, 23 L. R. A. 305), it is said: "The assignment of a contract is generally held to be subject to the equities, including set-off, growing out of the contract itself, regardless of when they mature." See, also, *Smith* v. *Wall,* 12 Colo. 363 (21 Pac. 42) ; *Newton* v. *Lee,* 69 Hun, 90 (23 N. Y. Supp. 536). The contract in this case was entire as far as it related to the first payment to be due thereunder, an assignmnet of which could not so sever the installment as to compel the defendant to apportion a part thereof to the labor performed when the assignment was made, if he sustained any damage as the result of the default of Yee Sing & Company. Their employees refused longer to work for them, and defendant, not being able to secure other laborers, was compelled to take active measures to prevent the failure of his crop ; and having discharged the duty which devolved upon the plaintiff, if it sought to recover under the assignment, he should be entitled to an offset against its demand to the extent of the damages resulting from the failure of its assignors to keep their agreement.

8. The court, at plaintiff's request, gave the following instruction : "I instruct you that if you find from the evidence that the first payment to become due under the contract made by defendant with Yee Sing & Company was assigned to the plaintiff, and that notice of such assignment was given by plaintiff to defendant, he (defendant) could make no agreement with the said Yee Sing & Company, or the employees of said company, whereby any part of the

wages theretofore earned and due from Yee Sing & Company to their employees should be paid by defendant." It is insisted by plaintiff's counsel that this instruction is inconsistent with those given by the court of its own motion, and, invoking the rule announced in *Morrison* v. *McAtee,* 23 Or. 530 (32 Pac. 400), it is argued that for this reason the judgment should be reversed. In the case to which attention is called the instructions were inconsistent and contradictory, but, as each was predicated on the assumption that, if the jury found for the plaintiff, they might adopt different methods of computing the amount due him, and, having so found, it was impossible to say which portion of the charge had been obeyed, thereby necessitating a reversal of the judgment. In the case at bar the instructions given by the court of its own motion correctly stated the law applicable to the facts involved, while that given at plaintiff's request was improper; but, as the jury found for the defendant under the instructions given upon the court's motion, it is evident that they were not misled by the instruction last above quoted, and, this being so, the inconsistent instruction furnishes no ground for the reversal of the judgment: 2 Thompson, Trials, § 2401; *Smitson* v. *Southern Pac. Co.,* 37 Or. 74 (60 Pac. 907).

There are other alleged errors assigned, but, deeming them unimportant, the judgment is affirmed.        AFFIRMED.

Decided 8 July, 1901.

ON REHEARING.

*Mr. J. D. Slater* for appellant.

*Messrs. Thos. H. Crawford* and *C. E. Cochran* for respondent.

MR. JUSTICE MOORE delivered the opinion of the court.

At the rehearing of this cause it was insisted that the statement in the former opinion (61 Pac. 837), to the ef-

fect that an instruction given at plaintiff's request, though inconsistent with the general charge, could not have misled the jury, was based upon the erroneous assumption that they found for the defendant, and that, inasmuch as the transcript shows that the verdict was for the plaintiff in the sum of one dollar, the jury were evidently misled by the inconsistent instructions, and hence the judgment should be reversed.   The transcript discloses that testimony was introduced tending to show that, after having received notice of the assignment, the defendant paid to the employees of Yee Sing & Company the sum of $250 for wages theretofore earned by them, and, the action having been instituted to recover the sum of $500 alleged to be due on an installment of the contract entered into between Yee Sing & Company and the defendant, and assigned to the plaintiff, if the jury had observed the instruction given at the latter's request they must necessarily have found for the plaintiff in the sum of $250, at least, on account of the wages earned by the employees of Yee Sing & Company, and paid to them by the defendant after having received notice of the assignment.   But, as the jury found for the plaintiff in the sum of one dollar only, it is evident that they were not misled by the inconsistent instructions, and hence we adhere to the former opinion.

AFFIRMED ON REHEARING.