SILVER, RESPONDENT, *v.* MORIN, APPELLANT.

(No. 5,754.)

(Submitted October 20, 1925. Decided October 31, 1925.)

[240 Pac. 825.]

*Assignment — Novation — Payment — Venue — Judicial Notice —Building Contracts—Waiver of Conditions.*

Assignment—Building Contract—Novation.

1.   Where a subcontractor assigned a portion of the moneys to become due under his contract with defendant, and defendant accepted the assignment, the transaction constituted a novation to the extent of the amount of money assigned; the plaintiff became the creditor of defendant, and the rights and remedies of the parties were determinable under the contract of novation.

Judicial Notice—Location of City in State.

2.   Courts take judicial notice of the fact that a given city within the state is located in a certain county.

Contracts—Payment—Venue in County of Creditor's Residence.

3.   Where a contract does not designate the place of payment of a money obligation, the law makes it payable where the creditor resides or where he may be found, if within the state, and upon failure of the debtor to seek the creditor for the purpose of making payment, the latter may sue in the county of his residence.

Same.

4.   Under the above rule (par. 3), *held,* that where a subcontractor had agreed to furnish granite for a building to be erected in M. county, the stone to be delivered in the city of M. in that county, and assigned a portion of the money to be earned by him under that contract to another residing in S. B. county, the contract of assignment not designating the place of payment, a change of venue from S. B. county, in which suit had been commenced by the assignee, to M. county was properly denied.

Assignment—Assignable Interest in Assignor—Evidence—Sufficiency.

5.   Evidence in an action on an assignment of a portion of the money to become due to a subcontractor from the contractor to a third party, in which defendant contractor contended that the assignor had parted with all his interest in the contract and had therefore nothing to assign, *held* sufficient to sustain a finding that at the time of the assignment the assignor had an assignable interest in his contract.

Same — Acceptance by Building Contractor — Subsequent Advances to Assignor—Action on Assignment—Contractor not Entitled to Set-off.

6.   Where a building contractor had accepted an assignment of a definite amount to become due to the assignor who had contracted to furnish the cut stone for the building, and thereafter advanced money to meet the assignor's pay-rolls (in excess of the amount

—————————————

·  ·  2.  See 15 R. C. L. 1083.

assigned) without the assignee's consent, he was not entitled, in an action on the assignment, to credit for such advancements as against the amount claimed under the assignment.

Findings in Law Action Entitled to Same Weight as Verdict of Jury.
7. In a law action tried by the court without a jury, the findings of the court are entitled to the same weight as is the verdict of a jury, and if the evidence is sufficient to sustain them they will not be disturbed on appeal.

Building Contracts—Waiver of Conditions by Contractor.
8. A building contractor, who receives and accepts building material with knowledge that the provisions of the contract entered into between him and the one who furnishes it with relation to time of delivery were not being complied with waives such provisions.

---

Appeal and Error, 4 C. J., sec. 2853, p. 876, n. 78; p. 878, n. 81.

Assignments, 5 C. J., sec. 115, p. 943, n. 35; sec. 148, p. 960, n. 4; p. 961, n. 5; sec. 260, p. 1020, n. 50 New.

Building and Construction Contracts, 9 C. J., sec. 131, p. 790, n. 91 New.

Evidence, 23 C. J., sec. 1868, p. 84, n. 7.

Novation, 29 Cyc., p. 1137, n. 45.

Payment, 30 Cyc., p. 1185, n. 54, 55, 56.

Recoupment, Set-off and Counterclaim, 34 Cyc., p. 747, n. 76.

Venue, 40 Cyc., p. 92, n. 66.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

ACTION by J. R. Silver against S. G. Morin. Judgment for plaintiff and defendant appeals. Affirmed.

*Messrs. Murphy & Whitlock* and *Mr. Howard Toole,* for Appellant, submitted a brief; *Mr. Toole* argued the cause orally.

Citing on the principal question involved: *Stanton v. Dennis,* 64 Wash. 85, 116 Pac. 650; *In re Hellams,* 223 Fed. 460; *Litchgi v. Gottleib,* 134 Mo. App. 237, 113 S. W. 1134; *Lynip v. Alturas School Dist.,* 24 Cal. App. 426, 141 Pac. 835; *Fisken v. Milwaukee Bridge & Iron Works,* 86 Mich. 119, 49 N. W. 133; *Suhr v. Metcalf,* 33 Cal. App. 59, 164 Pac. 407; *Tatsuno v. Pederson,* 21 Cal. App. 585, 132 Pac. 608; *Pacific Rolling Mills v. English,* 118 Cal. 123, 50 Pac. 383; *Farmers & Traders' Nat. Bank v. Woodell,* 38 Or. 294, 61 Pac. 837; *Pohlman v. Wilcox,* 146 Cal. 440, 80 Pac. 625; *Dickerson v. City of Spokane,* 35 Wash. 414, 77 Pac. 730; *Clark v. Collier,*

100 Cal. 256, 34 Pac. 677; *O'Connor* v. *Smallwood,* 183 App. Div. 443, 170 N. Y. Supp. 756; *Sparks* v. *Jasper County,* 213 Mo. 218, 112 S. W. 265.

*Mr. Francis A. Silver,* for Respondent, submitted a brief and argued the cause orally.

Citing: *Homer* v. *Shaw,* 212 Mass. 113, 98 N. E. 697; *Buttrick Lumber Co.* v. *Collins,* 202 Mass. 413, 89 N. E. 138.

MR. JUSTICE STARK delivered the opinion of the court.

The complaint in this action alleges: That on or about the twenty-first day of February, 1922, the defendant entered into a contract with one James Welch by which the latter, for a consideration of $4,500 to be paid to him, agreed to furnish the defendant certain cut stone for use in the construction of residence halls of the State University at Missoula, Montana; that thereafter, for a valuable consideration, said James Welch, assigned to plaintiff a portion of the money to become due on said contract by a written instrument as follows:

"Butte, Montana, May 10, 1922.

"S. G. Morin, Paulson Bldg., Spokane, Washington: I do hereby assign, transfer and set over to J. R. Silver, 501 East Galena street, Butte, Montana, the sum of twelve hundred dollars ($1,200.00) same to be paid from moneys when due me under my contract to furnish granite stone for Men's and Women's Residence Halls at State University, Missoula, Montana.

"James Welch."

That on May 11, 1922, the plaintiff delivered the above assignment to the defendant, who accepted the same, and then agreed to pay said amount to the plaintiff out of moneys to become due under the contract between him and Welch.

The complaint further sets forth that prior to the commencement of this action said Welch fully performed his contract with the defendant, by reason whereof the sum of $4,500 be-

came due thereon, subject to the assignment of the plaintiff; that defendant wholly ignored the plaintiff's rights under said assignment and failed and refused to pay the plaintiff the said sum of $1,200, and asks judgment for that amount, with interest and costs.

The defendant first appeared in the action by filing a demurrer accompanied by a motion and demand for a change of place of trial from Silver Bow county to Missoula county, supported by defendant's affidavit of merits. In addition to the usual formal matters the affidavit stated: "That plaintiff's cause of action, if any he has, is based upon a contract made between this defendant at Missoula, Montana, and one James Welch, by means of correspondence through the United States mail; that said contract provided, among other things, for the delivery to defendant by said Welch f. o. b. Missoula, county of Missoula, state of Montana, of certain quarried granite to be used by this defendant in the erection of certain buildings and structures in Missoula, Missoula county."

The motion for a change of place of trial was denied and the ruling of the court in this regard is made the basis of the first assignment of error on this appeal.

The motion was properly denied. When, according to the [1] allegations of the complaint, the defendant accepted the assignment from Welch to the plaintiff, it constituted a novation, *i. e.*, to the extent of $1,200, to be earned under the Welch contract, the plaintiff became a creditor of the defendant, and defendant obligated himself to pay that amount to the plaintiff out of the sum to be earned by Welch. (Sec. 7460, Rev. Codes 1921; *Suhr* v. *Metcalfe,* 33 Cal. App. 59, 164 Pac. 407; *Barlow* v. *Lande,* 26 Cal. App. 424, 147 Pac. 232.) The contract thus created between the defendant and Welch became subject to all the rules concerning contracts in general (sec. 7462, Rev. Codes 1921), and the rights and remedies of the parties were determinable under it (*Kirkup* v. *Anaconda*

74 Mont.—26

*Amusement Co.,* 59 Mont. 469, 17 A. L. R. 441, 197 Pac. 1005).

The assignment accepted by the defendant, and which con-
[2] stituted the contract between him and the plaintiff, did not designate the place where payment should be made, but did indicate plaintiff's residence as being at "501 West Galena street, Butte, Montana." The court will take judicial notice of the fact that Butte is in Silver Bow county.

When a contract does not designate a place of payment of a [3, 4] money obligation, the law makes the same payable where the creditor resides, or where he may be found, and likewise makes it the duty of the debtor to seek the creditor for the purpose of discharging the obligation when due, pro-vided the creditor is within the state at that time. (*State ex rel. Coburn* v. *District Court,* 41 Mont. 84, 108 Pac. 144; *State ex rel. Western Accident & Indemnity Co.* v. *District Court,* 55 Mont. 330, 176 Pac. 613.) Therefore, in the instant case, it was the duty of the defendant, in performance of the contract for payment of the money due to the plaintiff, to seek the latter in Silver Bow county and make payment there, and, when he failed to do so, plaintiff had a right to maintain a suit against him upon his contract in that county. (Sec. 9096, Rev. Codes 1921.)

After the motion for a change of place of trial was denied, the demurrer to the complaint was overruled, and thereafter defendant filed an answer, wherein he set out the contract between himself and Welch, alleged that Welch wholly failed and neglected to comply with said contract or to furnish the cut stone therein called for, and likewise failed, neglected and refused to pay for the material, freight charges and labor claims which became due in connection with furnishing such cut stone, and that by reason of these facts the defendant was compelled to pay, and did pay, the material, labor and freight charges on said cut stone before the same was delivered to him, all of which charges it is alleged were first liens upon

the cut stone, and that without the payment of said sums the defendant would have been unable to secure any of said cut stone to be placed in said building; that the amount thus paid by the defendant was $4,500, and therefore no moneys ever became due to the said James Welch which were available for payment to the plaintiff under his said assignment.

Trial was had without a jury. The court made findings of fact and conclusions of law favorable to the plaintiff, upon which judgment was entered. After his motion for a new trial had been overruled, the defendant appealed from the judgment.

Although there are thirty-eight assignments of error, all of the remaining contentions of defendant can be readily discussed and disposed of under two headings.

(1) The first contention of defendant is that, prior to the [5] time when Welch made the assignment to the plaintiff, he had parted with all his interest in his contract with the defendant, and so had no interest therein which passed to the plaintiff by the assignment.

The testimony introduced at the trial disclosed that Welch became ill about March 1, 1922, so that he was not in physical condition to proceed in person with carrying out his contract with the defendant and about that time made some arrangement by which J. R. Silver, Jr., was to look after the same for him. The precise nature of this arrangement was not clearly disclosed in the testimony. Whatever the arrangement was, it is not shown to have been in writing. In the oral testimony introduced concerning it some expressions appear to have been made by Silver, Jr., which would tend to indicate that he took over the entire contract and was furnishing the cut stone thereunder on his own account. On the other hand, on May 10, 1922, six weeks after the arrangement was made between Silver, Jr., and Welch, the latter wrote to the defendant concerning the contract, and, after advising him

that Silver, Jr., would be in charge of the cutting of the stone and would be in Missoula until the work was completed, said: "You are hereby authorized to make all payments  *  *  * to him for my account and he is authorized to receipt for the same. I have made two assignments against the moneys to become due me for furnishing this material.  *  *  * I trust you will accept these assignments when presented." In other portions of his testimony, Silver, Jr., stated that he was in charge of the work for Welch. It also appeared that the defendant carried the account of his transactions on his books in the name of Welch, and other circumstances were developed tending to show that Silver, Jr., was the agent of Welch and that the latter retained full ownership of the contract. And, further, a persuasive fact is that counsel for the defendant, at the close of the testimony, requested the court to adopt as its conclusion of law No. 2: "That the failure of said Welch and his agent to deliver said cut stone as provided in said contract was a breach of said contract," *etc.*, and the agent therein referred to was Silver, Jr. In the face of this testimony we cannot say that the court erred in impliedly finding that on May 10, 1922, Welch had an assignable interest in his contract with the defendant.

(2) The defendant's next contention is that, because of the [6] fact that Welch was unable to finance the contract, he (the defendant) was obliged to and did, in order to obtain the cut stone which Welch had contracted to deliver to him, necessarily pay out practically the whole of the contract price for freight on shipments of stone, wages of men employed to cut and trim the same, and for tools and materials supplied to enable Welch to comply with his agreement; that he was entitled to deduct these payments from the amount earned under the Welch contract, for which reason no money ever became due to Welch and he should not be required to pay the plaintiff anything under his assignment, even though Welch had an assignable interest in the contract when he made

the assignment of May 10, 1922. Among the amounts paid out by the defendant, as above set forth, was an item of $3,483.38, as wages of men employed on the contract.

The court made findings to the effect that in the latter part of May, or early in June, Welch and the defendant entered into an arrangement by which the latter agreed to advance and supply all the money required to pay the men employed by Welch in getting out the stone required to fulfill the contract; that the $3,483.38 was advanced to Welch by the defendant under that arrangement; that the same constituted a loan of money to Welch; and that defendant's right to be reimbursed for such loan was subsequent and inferior to the obligation of defendant to pay plaintiff the amount of his assignment. Similar findings and conclusions were made concerning other payments made by the defendant, but it is only necessary for a determination of this appeal to consider the item of $3,483.38.

As above pointed out, Welch became ill so that he was unable to give personal attention to carrying out his contract with defendant and arranged with J. R. Silver, Jr., to look after it for him. The stone was shipped to Missoula in the rough and there cut and trimmed by men employed by Silver, Jr., as agent for Welch, and it was to these men that the $3,483.38 was paid.

In reference to the payment of this amount, the defendant testified that in the latter part of May, or early in June, he had a conversation with Silver, Jr., in which, after considerable argument and discussion, "I finally agreed to supply the money for the pay-rolls * * * that he had to have, and I authorized the superintendent to make such payments and to check his time at the yards carefully to ascertain that the pay-rolls were correct, and from then on I furnished money to carry on the pay-rolls and to take up the expense bills." The testimony shows that, after this agreement had been entered into, nine separate pay-rolls totaling the above specified

amount were made up by Silver, Jr., between June 16 and August 11, and the defendant, when each of them was exhibited to him, issued a check payable to Silver, Jr., for the amount thereof, and the latter paid the wages of the men, as shown on the pay-rolls.

In his testimony, the defendant stated that it was necessary for him to supply the money to take care of these pay-rolls in order to enable Silver, Jr., to carry on the work and deliver the stone, but Silver, Jr., testified that such advancements were not necessary, as he could have financed the contract regardless of whether they had been made by the defendant or not. It thus appears that there was a direct conflict in the testimony concerning the necessity which impelled the defendant to make these advancements for the purpose of taking care of the pay-rolls.

The case having been tried to the court, its findings are [7] entitled to the same weight as the verdict of a jury (*Goldsmith* v. *Murray*, 48 Mont. 337, 138 Pac. 187; *Giebler* v. *Giebler*, 69 Mont. 347, 222 Pac. 436), and, if the evidence is sufficient to sustain the findings made by the trial court, such findings will not be disturbed by this court. From a consideration of the testimony, we are not able to say that it preponderates against the court's finding that the $3,483.38 paid to Silver, Jr., for the account of Welch, was an advancement on the contract and in effect constituted a loan of money.

The case then presents the situation of the defendant having accepted an assignment of $1,200 of the money which became due on the Welch contract, and subsequent to such acceptance advancing to the assignor an amount in excess of that sum without the knowledge or consent of the assignee, and now claiming that such advancement is entitled to priority over the claim of the assignee.

Even if the advancements made to Welch by the defendant after his acceptance of the assignment to the plaintiff should

be considered as payments on the assignor's contract instead
of loans of money as found by the court, such payment
would not constitute a defense to the plaintiff's claim. (5
C. J. 960, sec. 148.)

If Welch had abandoned his contract and had failed to
furnish the cut stone which he had agreed to furnish, and the
defendant, in order to secure the same, had paid the laborers
the amount of their claims for supplying it, a different situa-
tion would be presented. The court, however, found "that
the said James Welch did, prior to the twenty-sixth day of
August, 1922, fulfill and perform all of the conditions of the
said contract on his part to be kept and performed, save and
except that portion relating to the time of delivery of said
granite stone, which portion was performed in the manner
hereinbefore set forth." With reference to the time of per-
[3] formance, the court also found that, while the granite
stone was not delivered at the times called for in the contract,
the defendant received and accepted the same "with full
knowledge that the provisions of the contract relating to time
of delivery of said stone had not and were not being com-
plied with by the said James Welch," and that this con-
stituted a waiver of the provisions of the contract relating
to the time of delivery. These findings were warranted by
the evidence.

The facts so found distinguish this case from *Farmers &
Traders' Nat. Bank* v. *Woodell*, 38 Or. 294, 61 Pac. 837, 65
Pac. 520, cited and relied upon by defendant. In that case
it appeared that the assignor had abandoned the performance
of the contract, which was for the cultivation of a crop of beets,
and the defendant in the action, in order to save the same,
with the consent of the assignor, arranged with laborers to
complete the cultivation of the crop and made payments direct
to them for doing so. The court held that the amount so paid
was entitled to preference over the claim of the assignee of a
portion of the contract price; but in the course of its opinion

the court said: "It is admitted that, if the defendant had made the payment directly to Yee Sing & Co. [the assignor] after he was notified of the assignment, such payment would not relieve him from liability to the plaintiff."

The facts in the other cases cited by defendant differ so materially from those presented in the record which we are considering as to render the rules announced therein inapplicable here.

From a consideration of the whole case, it is our opinion that the findings of the court are sustained by the evidence, and the conclusions drawn therefrom are correct.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Holloway, Galen and Matthews concur.