No. 29,412.

HOWARD K. FOSTER, *Appellant,* v. THE BOARD OF EDUCATION OF THE CITY OF TOPEKA, *Appellee.*

(289 Pac. 959.)

Opinion filed July 5, 1930.

*William M. Bradshaw, Earl Thomas Reynolds, R. J. Reynolds* and *James H. Guy,* all of Topeka, for the appellant.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan,* all of Topeka, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This action was brought by plaintiff, as a taxpayer, asking for an injunction against the defendant board of education ·of the city of Topeka to prevent it from using moneys derived from taxation to pay for the transportation of pupils in the city of Topeka. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The petition set forth two causes of action. The first was dismissed and need not be noticed here. The case was tried to the court upon the second cause, which alleged, in substance, that plaintiff is a taxpayer residing in the city of Topeka, and that the defendant board of education of the city of Topeka is a municipal corporation organized and existing under the laws of the state of Kansas, and having charge and control of the public schools of the city of Topeka and adjacent territory taken into that city for school purposes. The petition further alleged that the defendant board of education has the power and authority to levy taxes and that plaintiff's property upon which he paid taxes was a part of the territory

under control of the board of education; that the board of education during the months of January and September, 1929, entered into contracts with the Kansas Power and Light Company and one Clarence G. Grimes to furnish busses for the purpose of hauling pupils from various parts of the city to Buchanan, Monroe, Washington, McKinley and other grade schools during the 1928-1929 school year and the 1929-1930 school year, and that the defendant board is using public moneys derived from taxation against the property of plaintiff for the payment of its obligations under the contracts with the above parties; that defendant has no authority to make such contracts for the purpose of furnishing transportation to school children, and that such contracts are without authority of law, illegal and void, and that by the furnishing of such transportation the board of education is imposing a public burden upon the taxpayers unauthorized by law.

Plaintiff asked that defendant be enjoined from using any of the moneys derived from taxation for the purpose of paying the obligations of defendant under such contracts and that it be enjoined from making future contracts for the transportation of pupils from one place to another within the school territory under its management and control.

To the above petition the defendant answered, admitting that plaintiff is a taxpayer residing within the territory under the control of defendant; that for forty years the board of education has followed a general policy of providing separate grade schools for children of white parents and for children of colored parents, and that in pursuance of such policy the city of Topeka has been divided for school purposes into districts. Defendant set forth the location and description of the territory of the various grade schools maintained for colored pupils. The answer further showed that there are in the city of Topeka, exclusive of junior high schools, 6,428 white children enrolled and 947 colored children; that there are nineteen grade schools for white children and four grade schools for colored children; that in addition the city maintains a school for undernourished children, in which are enrolled forty pupils; that the schools for colored children are located with reference to the residence of the largest number of colored families, but in some instances where families live more than ten blocks from a colored school bus transportation is furnished; that no transportation is

furnished for white pupils except to the school for the undernourished. The answer set forth that seventy-five colored children are transported daily to the Monroe school for colored children, twenty-one to Washington school, fifty-six to McKinley, and thirty-four to Buchanan; that the total cost of this transportation is $23.50 per day. The answer further alleged the establishment in 1928 by the board of education of a school for undernourished children, setting forth that this school is maintained in a small school building at the corner of High street and West Euclid; that it is maintained for children who on account of their physical condition are unable to keep up with the program of school work established for the ordinary school child, even though they are of average intelligence, and who if they were permitted to continue in the ordinary grade school would make no progress educationally or physically; that its purpose is to permit pupils to pursue their school work and at the same time devote special attention to their physical condition and to enable the teacher to adapt the school work to the physical ability of the pupils; that the undernourished children are picked out by the public-health nurses from the various grade schools and assigned to the school for undernourished children; that special attention is given in this school to rest periods and the work is assigned with special regard to the health of the pupils; that as soon as they have regained normal weight and health they are transferred back to their own schools; that these pupils live in all parts of the city and that the transportation to the school for undernourished children is furnished at a cost of $16.50 per week. Defendant further pleaded that the cost of all the transportation both for the colored children and for the undernourished children is paid out of the general fund of the board of education.

The defendant denied that such expenditures are without authority of law, but alleged that such authority is implied in the statute establishing the powers of boards of education in cities of the first class.

Trial was had to the court, and after hearing the court took the case under advisement. On November 30, 1929, it rendered judgment in favor of the defendant and against the plaintiff for costs. Plaintiff has appealed and contends that the court erred in denying the injunction.

The appellant contends that defendant has no implied authority to levy taxes for the purpose of obtaining funds to pay for the trans-

portation of pupils as set forth in the pleadings. The evidence is not abstracted, but the facts appear from the petition and the answer. It is admitted by both appellant and appellee that there is no express statute authorizing the board of education to levy taxes for the purpose of furnishing transportation.

The appellant cites section 4 of article 11 of the Kansas constitution, which provides that "no tax shall be levied, except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied." He further calls attention to R. S. 72-1702, "that the board of education in cities of the first class shall, in the month of August of each year, levy a tax for the support of the schools of the city, including building and repairs of school buildings."

The appellant also cites *Knowles v. Board of Education*, 33 Kan. 692, 7 Pac. 561, in which this court said:

"In our opinion the board of education of the city of Topeka is a distinct corporation from the municipal corporation of the city of Topeka. We think it is a quasi corporation only, and is not a corporation proper, as embraced within the scope of article 12 of the state constitution." (p. 701.)

It is to be noted in passing that this is a suit by a taxpayer and not an action brought to challenge the corporate power of the board of education by that branch of the government which is authorized to bring actions to question the extent of corporate powers or authority.

The appellant contends that the transportation of pupils is an extraordinary function on the part of the school authorities not included within the legitimate ends of education, and that a specific grant of authority is a prerequisite to its exercise either in the case of common-school districts, community high schools or boards of education in cities of the first class. Appellant points out that country school districts and rural high-school districts have been authorized by statute to furnish transportation, but argues that the need for transportation of pupils in country schools is much more pressing than in city school districts, and that since the legislature has seen fit to make an express grant of that power to country school districts, that a similar express grant is necessary in order to authorize a board of education in a city of the first class to furnish transportation.

The appellee, on the other hand, relies on R. S. 72-1724, which reads:

"The board of education shall have power to elect their own officers, make all necessary rules for the government of the schools of such city under its charge and control and of the board, subject to the provisions of this act and the laws of this state; to organize and maintain separate schools for the education of white and colored children, including the high schools of Kansas City, Kan.; no discrimination on account of color shall be made in high schools, except as provided herein; to exercise the sole control over the public schools and school property of such city."

Can it be said that the power to furnish transportation such as is being furnished by the board of education of the city of Topeka may be implied from the provisions of the foregoing statute? In *Gilbert v. Craddock*, 67 Kan. 346, 72 Pac. 869, in discussing the construction of a statute the court said:

"It is admitted that such authority may arise by implication. To be sure the implication must be a necessary one. It may be drawn from public policy; past acts; the entire terms, purposes and scope of the act to be considered; the inconvenience, inconsistencies and absurdities involved in the contrary consideration—indeed, from all things found in the act, the conditions surrounding it, the history antedating it, the purposes to be accomplished by it, and the policy dictating it. An act of the legislature is like any other writing in this respect. Its purposes are to be gathered from all of its terms. (Suth. Stat. Const., sec. 239.) A necessary implication does not mean to shut out every possible or imaginary conclusion, from which there is no possible escape, but means one leading to such a conclusion as, under the circumstances, a reasonable view impels us to take, the contrary of which would be improbable or absurd. Speaking upon the matter of implications in the consideration of statutes, it is said in *Black on Interpretation of Laws*, page 62:

" 'This doctrine does not empower the courts to go to the length of supplying things which were intentionally omitted from the act. But it authorizes them to draw inferences from the general meaning and purpose of the legislature, and from the necessity of making the act operative and effectual, as to those minor or more specific things which are included in the more broad or general terms of the law, or as to those consequences of the enactment which the legislature must be understood to have foreseen and intended. This is not the making of law by the judges. It is educing the will of the legislature by the logical process of inference. "It is a rule of construction that that which is implied in a statute is as much a part of it as what is expressed." And as a statute must always be construed with reference to the preexisting law, it will often happen that many details are to be inferred from the general language of the act, which are understood as necessarily involved in it though not enumerated.' " (p. 353.)

R. S. 72-1724 specifically authorizes the board of education in cities of the first class to maintain separate schools for colored children and white children.

As shown in the instant case, the city maintains nineteen schools for a total of 6,428 white children, or one school for an average of 338 pupils; that it maintains four schools for 947 colored children,

or one school for an average of 237 colored children. Having been granted specific power and authority by the statute to maintain separate schools, does it not necessarily follow that there must be an implication of authority to do all such acts as are reasonably necessary to enable the board of education to execute the power so expressly granted?

The city of Topeka is the third largest city in the state. The board of education in charge of its schools is faced with far greater and more complex problems than the board of either an ordinary common-school district or the board of a rural or community high school. Here we find the city has a school population in the grades of more than 7,000 pupils. The board of education is expected to manage the affairs of the schools in a sensible, businesslike and economical manner. What is the most businesslike way, the most expeditious method, of carrying out the power granted to the board of education to establish and maintain separate schools for white and colored children? If the board of education does not have the implied power to transport pupils under the conditions shown in the record in this case, then it is faced with the following alternatives as pointed out by the appellee:

(1) It may require the colored children who do not live near schools provided for them, to walk.

(2) It may abandon the separate-school system where children do not live near enough to the colored schools.

(3) It may construct and operate fourteen new schools, making in all nineteen schools for the 947 colored pupils, so that there would be an average of only fifty pupils to each such school.

In addition thereto the board must abandon the work of maintaining a separate school for undernourished children.

It would be manifestly unfair and discriminatory to the colored children to compel them to walk great distances to their schools. It has been held by this court that in establishing separate schools equal facilities cannot be denied colored children. (*Williams v. Parsons*, 79 Kan. 202, 99 Pac. 216.) To require the board of education to construct fourteen additional schools so that all of the colored children would have schools near their places of residence would be an indefensible waste of public funds. It would work a greater hardship on the plaintiff as a taxpayer than does the present system of transportation. In addition to providing these fourteen additional schools it would be necessary to provide additional

teachers and expensive equipment for each school, and on the whole it would present an extravagant, unbusinesslike and absurd method of handling the situation. Since the statute grants the board of education specific power to maintain separate schools, we hold that in order to maintain these schools in an efficient, economical and businesslike manner it necessarily follows that the board of education has the implied power to furnish transportation for the colored children who live in places remote from the locations of the various schools maintained for them.

This leaves the question of the authority to furnish transportation for the children who attend the school for the undernourished. The statute under consideration gives the board power to "make all necessary rules for the government of the schools of such city . . . and to exercise the sole control of the public schools and school property of such city."

In *Board of Education v. Welch*, 51 Kan. 792, 33 Pac. 654, this court held:

"The corporate functions of the board of education of a city of the first class are granted to assist in carrying out the general common-school system adopted by the state.

"The boards of education of cities of the first class are vested with large discretion in all matters pertaining to the management of the schools under their control. What rules and regulations may best promote the interest of the schools, and what branches shall be taught, other than those expressly prescribed by the statute for all school districts, are matters left to the determination of the directors of the boards; but they shall always keep in view the highest good of the schools. With the discretionary powers of such officers the courts will not interfere, unless there has been such an abuse of their discretion as works palpable injustice or injury." (Syl. ¶¶ 1, 2.)

In *Williams v. Parsons*, 81 Kan. 593, 106 Pac. 36, this court said:

"The control of city schools, including the selection of sites and the distribution of pupils, is devolved by the legislature upon the board of education. The discretion committed to that body is to be exercised, as was said in the opinion denying the motion to quash, 'untrammeled by judicial interference.'" (p. 594.)

These children are undernourished and unable to mingle in the regular grade schools with those who are normal in every respect and to carry the work assigned to the physically normal children. In many instances if such a school is not maintained the child who is undernourished or physically weak could not attend school at all. We believe that under the general powers granted to the board of education it is necessarily implied that the board has power to pro-

vide means for the education of not only the children who are in all respects robust and physically sound, but also to provide facilities to those who are not so favored. The public welfare demands that the child who is not physically sound shall have an opportunity to gain an education the same as his more favored brother. We conclude, therefore, that the defendant board of education has the implied power and authority to furnish transportation both to the colored children and to the undernourished children under the circumstances shown by the record in this case.

The injunction was properly denied, and the judgment is therefore affirmed.