No. 30,820.

W. H. DIEHL and W. E. STAUFFER, doing business as the MERCHANTS SECURITIES COMPANY, *Appellants*, v. O. P. BARKER, doing business as THE BARKER HARDWARE AND FURNITURE COMPANY, *Appellee.*

(20 P. 2d 534.)

Opinion filed April 8, 1933.

*Arnold C. Todd, James G. Norton, Carl O. Bauman* and *Julian E. Ralston,* all of Wichita, for the appellants.

*Burt Comer* and *Paul MacCaskill,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for a sum claimed to be due for merchandise sold. The jury answered special questions and returned a verdict for defendant. Plaintiffs have appealed.

The facts disclosed by the record are not seriously in dispute and may be stated as follows: The defendant, O. P. Barker, is a retail merchant at Wichita doing business under the name of the Barker Hardware and Furniture Company. The New Home Sewing Machine Company, of Rockford, Ill., and the Free Sewing Machine Company are subsidiaries of the Consolidated Industries, Inc. The plaintiff W. H. Diehl is comptroller of Consolidated Industries, Inc., and the plaintiff W. E. Stauffer is auditor of the Free Sewing Machine Company. They devote practically all business hours to their positions of comptroller and auditor, respectively. The two individuals constitute a partnership known as Merchants Securities Company, purchasing accounts and securities, and are plaintiffs in this action. About May 23, 1930, one R. E. Banks went to defendant's store and represented to him that he was state supervisor and general salesman for the New Home Sewing Machine Company and talked about selling sewing machines. As a result of his talk with defendant two instruments in writing were executed practically at the same time, one a few minutes before the other. We set them out in the order of their execution.

"MEMORANDUM AGREEMENT.

"City: Wichita. State: Kansas. Date: 5-24-30.

"*This is to certify* that the undersigned dealer has purchased of the New Home Sewing Machine Company 10 New Home sewing machines upon their regular terms, 2 per cent discount in 30 days, 6 mo. net, with the understanding that the state supervisor will furnish one (1) or more salesmen to assist the undersigned dealer in selling machines under the following conditions:

"1. The net retail price and maximum old machine allowance are to be arranged and agreed upon by the dealer and the state supervisor. Net retail $175. Old machine $25.

"2. The dealer is to pay the retail salesman 20 per cent commission on the net retail price received after the old machine allowance given has been taken off. $7 from each sale held in reserve.

"3. If for any reason the salesman makes a greater allowance for an old machine than the maximum old machine allowance agreed upon by the dealer, the excess allowance is to be charged against the retail salesman's commission by the dealer, and is to be deducted at time of settlement. It is further agreed that the old machines at all times are to be the property of the salesman.

"4. It is further agreed that stands and portable machines may be sold on terms as low as $5 down and $5 per month, if salesman is compelled to do so. On the console electric machines terms are not to be less than $10 down and $10 per month.

"5. The undersigned dealer agrees to pay the retail salesman each Saturday night his commission in full on all machines sold during the week.

"6. Sales at all times are made subject to the approval of the undersigned dealer.  "Signed: BARKER HDWE. & FURN., *Dealer.*
O. P. BARKER.
"Signed: R. E. BANKS, *State Supervisor.*
E. H. WODD, *Salesman.*

"Will take up all machines in the original crate in sixty days unsold and give credit for same at invoice prices.  R. E. BANKS."

"NEW HOME SEWING MACHINE CO.

1902-60 Eleventh St., Rockford, Ill.

Dated 5-24-30.

"Ship to Barker Hdw. & Fur. Co.; Town, Wichita; State, Kansas.
"Ship by freight.  Ship F. O. B. Orange, Mass., or Rockford, Ill.

| Quan. | Style. | New Home Electrics. Round bobbin. | Finish. | Price per machine. | Quan. |
|---|---|---|---|---|---|
| 8 | K40M | Colonial desk with light, sit straight.... | Walnut only...... | $66.85 | $534.80 |
| 2 | K54M | Windsor Consolette, light, sit straight... | Walnut only...... | 74.00 | 148.00 |
| 2 | K112M | Portable with light................... | Walnut only...... | 51.00 | 102.00 |

"Terms: Net 60 days: 2 per cent for cash in 30 days from date of invoice f. o. b. shipping point.

"If further time is desired we (or I) agree to give note or notes with accompanying order, or upon receipt of invoice.  (With interest at 6 per cent per annum, 60 days from date of shipment.)

"Due six months net.

"It is understood that no conditions agreed to by any solicitor or agent and not embodied herein will be in any way binding on the New Home Sewing Machine Company, and it is understood and agreed that the New Home Sewing Machine Company shall not be in any way liable under any separate or collateral agreement made between the undersigned and solicitor or agent.

"Salesman: BANKS.

Signed: BARKER HDWE. & FURN.
O. P. BARKER."

These appear to have been executed in duplicate and one each left with the defendant.  Banks stated he would send the others to the New Home Sewing Machine Company.  On May 29, 1930, the New Home Sewing Machine Company shipped the sewing machines to defendant.  He received them and paid the freight on them, amounting to $22.43.  On June 2, 1930, the New Home Sewing Machine Company made up a statement of its account with defendant and assigned the same to plaintiffs for a consideration of $753.40, which plaintiffs paid by check.  On June 5 the New Home Sewing Machine Company wrote defendant advising him that his account represented by the invoice of May 29 had been discounted with the Merchants Securities Company, 505 Manufacturers National Bank Building, Rockford, Ill., and when the invoices matured for payment please to remit direct to the Merchants Securities Company.  Under

date of June 7, 1930, the Merchants Securities Company wrote defendant:

"Under date of June 2 your account with the New Home Sewing Machine Company for $784.80 was purchased by us. This covers the New Home Sewing Machine Company invoice dated May 29, 1930, . . . In accordance with the wording of the contract we are inclosing a note ready for your signature. Please sign and return promptly."

Under date of June 9, 1930, defendant's attorney wrote the New Home Sewing Machine Company:

"On the 24th day of May, 1930, your state supervisor and agent, R. E. Banks, made and entered into an agreement with Barker Hardware and Furniture Company, with which said agreement you are familiar. The covenants and stipulations in said agreement contained have been violated, particularly with reference to furnishing a salesman to distribute said sewing machines. You are hereby notified and will take notice that the Barker Hardware and Furniture Company and/or O. P. Barker rescinds said contract and will treat same as a nullity in the future. We are holding the machines . . . subject to orders from you. . . . This letter will also serve as an answer to your letter of June 5, 1930, advising you had discounted this account with the Merchants Securities Company of Rockford, Ill. Although you are no doubt familiar with this fact, you are advised that under date of June 7, 1930, the last-mentioned company forwarded a promissory note for the signature of Mr. Barker advising that they were now the owner of said account. We suggest that if these machines are now the property of the Merchants Securities Company that you adjust the matter with them immediately."

Under date of June 17 the New Home Sewing Machine Company wrote defendant's attorney:

"Replying to your letter of June 9, please advise immediately what agreement is referred to in your first paragraph. Do you mean to state that a separate written agreement was entered into in addition to the purchase contract? If so, please let us have a copy of this agreement at once, as this office knows nothing of it."

On June 26 defendant's attorney forwarded to the New Home Sewing Machine Company a copy of the contract and again asked what disposition it wished made of the machines. On July 3 the New Home Sewing Machine Company wrote defendant's attorney:

"Replying to your letter of June 26, you are referred to the clause on the bottom of the two purchase contracts dated May 24, directly under which is the signature of the Barker Hardware and Furniture Company, O. P. Barker:

" 'It is understood that no conditions agreed to by a solicitor or agent and not embodied herein will be in any way binding on the New Home Sewing Machine Company, and it is understood and agreed that the New Home Sewing Machine Company shall not be in any way liable under any separate or collateral agreement made between the undersigned and solicitor or agent.'

"We cannot understand why the Barker Hardware and Furniture Company was so unfair to the New Home Sewing Machine Company as to enter into a private agreement with the salesman. If we had known any such agreement existed we would have declined to ship the machines.

"There is nothing further we can do in the matter, however, as we no longer own the account. We wash our hands of the whole unpleasant business."

On July 7, 1930, plaintiffs wrote defendant's attorney:

"Any dispute you may have with the New Home Sewing Machine Company is, of course, no concern of the Merchants Securities Company. We do not care to enter into the matter. Payment will be expected," etc.

On August 6, 1930, the Merchants Securities Company wrote defendant the account was due and payment should be made, but if he preferred to take advantage of note settlement he would find a note inclosed. On August 26 plaintiffs wired defendant that they would draw a draft on him within five days if the account were not paid. On September 4 the draft was drawn and a letter written defendant advising him of that fact. The draft was not paid.

On August 15 the New Home Sewing Machine Company wrote defendant's attorney:

"A copy of your letter of August 9 to the Merchants Securities Company has just been received. We are wondering just how many notices your clients require to convince them that solicitors for the New Home Sewing Machine Company have no authority other than to take orders subject to acceptance or rejection of the home office. Mr. R. E. Banks went on vacation June 28. We have not heard from him since. . . . We regret very much the unpleasantness of the situation, but we cannot see that the Barker Hardware and Furniture Company have anyone but themselves to blame for it."

Under date of August 14 plaintiffs wrote defendant's counsel, replying to his letter of August 9:

". . . You will refer to our letter of July 7, in which we plainly stated that we cannot enter into any dispute you may have with the New Home Sewing Machine Company. The account is now past due, and we must insist upon immediate remittance. . . . We do not know Mr. Banks, excepting that he was a solicitor for the New Home Sewing Machine Company. He certainly has no connection with the Merchants Securities Company. . . ."

Plaintiffs predicated their action on the order for the machines executed by defendant and its assignment to them. Defendant in his answer undertook to plead two defenses: (1) That he had been induced to execute the order by the fraudulent representations and agreements of Banks, the general agent of the New Home Sewing Machine Company; and (2) that under the facts pleaded the two instruments—the memorandum agreement and the order for the

machines—should be construed together as embodying the contract of the parties.

As respects the agency of Banks, defendant alleged that he was a general agent for the New Home Sewing Machine Company. Plaintiffs in reply denied that Banks was a general agent and alleged that he was soliciting agent only, whose orders solicited had to be approved by the New Home Sewing Machine Company before they were binding, and that he had no authority to do anything other than take orders. When defendant's counsel wrote the New Home Sewing Machine Company on June 9, referring to R. E. Banks as "your state supervisor and agent," the reply of the New Home Sewing Machine Company of June 17 did not deny that relation. There is evidence that R. E. Banks was in the employ of the New Home Sewing Machine Company from about April 9, 1930, until he "went on his vacation, June 28." The contract between him and the New Home Sewing Machine Company is dated April 9, 1930, it fixed territory in which he was to travel, which we assume included Wichita, Kan., since no one contends it did not, and contained, among others, this provision:

"Second party (R. E. Banks) shall solicit orders for sewing machines only at such prices and upon such terms as may be from time to time authorized in writing by first party, and shall offer the prospective purchasers only such inducements to purchase as first party may from time to time in writing authorize, and shall at all times conduct his solicitation of orders so as to fully comply with first party's instructions."

The first party reserved the right to accept or reject any orders, and—

". . . it is specifically understood and agreed by and between the parties hereto that second party is a traveling solicitor only for first party, who shall solicit orders for sewing machines; . . . that second party is without authority to bind first party by his statements or writings, and that under no circumstances whatsoever shall second party make a contract or agreement, oral or written, that shall purpose to bind first party."

It does not appear defendant knew anything of this contract until it was produced in court, but it should be noted that by its terms the first party might, in writing, authorize the second party to make "inducements to purchase." We find no evidence in the record as to whether the New Home Sewing Machine Company had authorized Banks to make, as an inducement to purchase, the memorandum agreement which he did make with defendant. There is no evidence he had not been so authorized.

Defendant had a cross petition for freight paid and storage charges, but since the jury allowed him nothing on that, and there is no cross appeal, we give it no attention.

Neither R. E. Banks nor the New Home Sewing Machine Company, or anyone acting for it, seriously undertook to carry out the memorandum agreement with respect to the sales campaign or taking up the uncrated machines in sixty days.

Special questions were submitted to the jury and answered as follows:

"No. 1. Did the agent and salesman of the New Home Sewing Machine Company, for the purpose of obtaining the written order sued upon, from the defendant, represent to him that he would sell the certain sewing machines? A. Yes.

"No. 2. Were said sewing machines so sold? A. No.

"No. 3. Did defendant rely on the fact that said machines were to be sold in the signing of said order? A. Yes.

"No. 4. Did Banks represent that he had authority to make the written contract in question? A. Yes.

"No. 5. Did defendant rely on said representations? A. Yes.

"No. 6. Did defendant have any knowledge of any limitation on Banks' authority? A. No.

"No. 7. Under all the circumstances, did the defendant have reasonable cause to believe Mr. Banks had authority to bind his employer the New Home Sewing Machine Company to the terms of the contract executed by the defendant and Mr. Banks, defendant's exhibit A? A. Yes.

"No. 8. If you answer the foregoing question in the affirmative, then state in detail the circumstances and facts which you find justified the defendant in so believing. A. We, the jury, find that Mr. Banks was an authorized agent of New Home Sewing Machine Company and had all reasons to believe same."

We have been furnished an exceptionally well-written brief for appellants. The several points relied upon for reversal are clearly stated and argued, and numerous authorities are cited, all of which we have examined. The points argued, however, all center about and depend upon the one main contention made in the case, namely, that defendant is irrevocably bound by the order which he signed, because it contained this clause:

"It is understood that no conditions agreed to by any solicitor or agent and not embodied herein will be in any way binding on the New Home Sewing Machine Company, and it is understood and agreed that the New Home Sewing Machine Company shall not be in any way liable under any separate or collateral agreement made between the undersigned and solicitor or agent."

It is argued this clause was printed in clear type directly above defendant's signature; that he had an opportunity to read it; that if he did not do so it was his own fault. Defendant testified in substance that he did not give the wording of the order of the machines much attention and that he was induced to execute the order by the representations made by Banks and embodied in the memorandum agreement. The New Home Sewing Machine Company, having obtained the order containing this clause signed by the defendant, and having assigned it to another unit of its business group, concluded to wash its hands of the whole unpleasant matter; and plaintiffs, having procured the assignment of the order, declined to take any interest in any quarrel which defendant had with the New Home Sewing Machine Company. Are these parties under the facts in this case justified in taking such a position?

We first observe that this order for the machines is not a negotiable instrument. It was assigned to plaintiffs—not negotiated to them free from defenses—hence plaintiffs are in no better position to maintain this action than the New Home Sewing Machine Company would be.

Much is said in the argument about the limitations of the authority of R. E. Banks as agent for the New Home Sewing Machine Company. It is clear he was the agent of the seller, not the agent of the buyer, hence the representations he made in order to effect the sale were made for and on behalf of the seller. Plaintiffs contend that the memorandum agreement was never forwarded by Banks to his principal. If so, that dereliction was not one for which the defendant is responsible. The seller must stand such inconvenience or loss as resulted therefrom. The evidence sustains the jury's finding that in dealing with defendant Banks was the authorized agent of the New Home Sewing Machine Company.

It is argued that Banks was a soliciting agent only, and that the contract of purchase was not complete until it was accepted at the home office. There is nothing on the order for the machines to indicate that it required acceptance at the home office. On this order Banks was designated as salesman. Defendant was justified in believing that the entire contract for the purchase of machines was being made with Banks as "salesman" and "state supervisor" of the seller and that all the things agreed upon by them and reduced to writing constituted their contract. It is true that in the contract

between the New Home Sewing Machine Company and R. E. Banks, the terms of which were unknown to defendant, Banks was designated as solicitor to take orders and report them to his principal for approval. But even in that contract Banks was authorized to make such "inducements to purchase" to a buyer as his principal directed, and it is not negatived by the evidence in this case that he had been directed to make the inducements to purchase which he did in fact make to the defendant.

On the point of the principal being bound by any dereliction of its agent in reporting the contract made with the purchaser, this case is much like that of *White Sewing Machine Co. v. Edwards*, 120 Kan. 151, 242 Pac. 129. There a proposition had been made to send help to sell the machines if an order were given, and the purchaser insisted on having written in the contract the agreement relating to this point. The agent wrote it in the copy left with the buyer, but not in the one he sent to his principal, but he succeeded in getting both signed by the buyer. It was held the seller could not recover. To the same effect were *Shook v. Manufacturing Co.*, 75 Kan. 301, 89 Pac. 653; *Hart v. Haynes*, 96 Kan. 262, 150 Pac. 530; *Advertising Co. v. Smalley*, 101 Kan. 645, 168 Pac. 677; and *Manufacturing Co. v. Scranton*, 116 Kan. 93, 225 Pac. 731.

It is argued no fraud was shown in the case. But can that reasonably be said? Considering all the facts disclosed by the record in this case, details of which need not be restated, fair-minded jurors and the trial court should not be criticized if they reached the conclusion that this entire selling scheme was conceived in fraud, which plaintiffs are aiding by seeking to enforce the collection of the account. Even written contracts may be so drawn and used as to be indicative of fraud. See *Yates v. Sugar and Land Co. et al.*, 117 Kan. 405, 414, 231 Pac. 1034; *S. Pearson & Son v. Dublin Corporation*, 1907 A. C. (House of Lords) 351. It was not error for the court to instruct the jury on this point of the case, and the special findings of the jury relating thereto are supported by the evidence.

But, passing that—since R. E. Banks was the agent of the New Home Sewing Machine Company for the purpose of negotiating with defendant for the sale of the machines, whatever he did in that respect was the same as though it were done by the company itself, and the two instruments executed at that time must be re-

garded as embodying the contract of the parties. (*Windmill Co. v. Piercy*, 41 Kan. 763, 21 Pac. 793; *Hudson v. Riley*, 104 Kan. 534, 180 Pac. 198; *Skinner v. Skinner*, 126 Kan. 601, 270 Pac. 594.) Since there was no substantial effort made by the seller to comply with the provisions of the contract on its part with respect to sales to be conducted, defendant was justified in rescinding. This he did with reasonable promptness.

There was no material error in the admission of evidence or in the instructions of the court.

The judgment of the court below is affirmed.