## FLOOR v. MITCHELL et al.

No. 5413.   Decided February 11, 1935.   (41 P. [2d] 281.)

204

206

*Chris Mathison,* of Salt Lake City, and *D. B. Hempstead,* of Washington, D. C., for appellant.

*F. W. James,* of Salt Lake City, for respondents.

MOFFAT, Justice.

The action herein is brought upon what is referred to as a conditional sale contract to recover a balance alleged to be due thereon with interest and attorney's fees. The subject-matter of the contract relates to the sale and installation at Parowan, Iron county, Utah, of a "Talking Picture Reproducing Equipment." The complaint was filed in the district court of the Third judicial district of the state of Utah in and for Salt Lake county.

Among other matters not necessary to set forth fully, it is alleged: That on or about the 15th day of March, 1930, the National Filmfone Corporation entered into a conditional sale agreement in writing with the defendants whereby they agreed to purchase a talking picture equipment according to the terms of a written contract and referred to as an "Installation." The equipment was to be installed for use in the Aladdin Theatre at Parowan City, Iron county, Utah; the installation was made; the sum of $500, the initial payment, was made; the sum of $325 was to be paid upon completion of the "Installation," and the balance of $1,500 was to be paid in fifteen equal monthly payments; the defendants paid $162.50 in part payment of the $325 payment and have failed, refused, and neglected to make any other or further payments; there is a balance due and owing in

the sum of $1,625 besides interest. Prior to the commencement of the action the National Filmfone Corporation, for value, assigned to the plaintiff, Nick Floor, the contract and all to become due thereon. Judgment is demanded accordingly.

Attached to the complaint is a purported copy of what plaintiff alleges to be the agreement. Defendants claim there were other matters included in the agreement in the form of a separate written memorandum. This memorandum, alleged by the answer to have been made and signed at the same time, constitutes the basis for errors assigned on this appeal, aside from the question of change of venue.

After filing the complaint in Salt Lake county, and before the time within which the defendants were required to answer, they filed a general demurrer to the complaint. At the same time they filed a motion for a change of venue, asking to have the cause transferred to Iron county for trial. No question is raised upon the demurrer or the disposition made of it. The motion for change of venue from Salt Lake county to Iron county came on for hearing at Salt Lake county. An affidavit on behalf of defendants in support of the motion was made and filed by counsel for defendants at the time of filing the demurrer and motion for change of venue. In opposition thereto, a counter affidavit on behalf of plaintiff was made and filed by counsel for plaintiff.

The motion set forth four reasons for a change of venue: (1) That the cause of action arose at Parowan, Iron county, Utah; (2) that all of the defendants are residents of Iron county; (3) that the action must be tried in the county wherein the cause of action arose; and (4) that convenience of witnesses would be promoted by the change. The judge of the district court of Salt Lake county ordered that the cause be transferred to Iron county for trial. After transfer of the cause to the district court of the Fifth judicial district of Iron county, the defendants' demurrer was overruled. Defendants answered. The cause was tried to the

court and judgment rendered in favor of defendants. Plaintiff's complaint was dismissed.

Several errors are assigned. In argument, however, they are all grouped under two headings: (1) Change of venue, and (2) merits of the cause. The merits of the cause and the basis upon which all the other factors rest, relate to the written memorandum alleged to have been made at the time the agreement was signed. Put otherwise, the plaintiff and appellant claims the filled-in form of the printed contract constituted the complete agreement. Defendants and respondents maintain that the filled-in form of the printed contract, with the additional memorandum, constituted the agreement. The trial court accepted defendants' view, hence appellant's assigned errors. There was an additional matter raised by defendants' answer to the effect there was no valid assignment of the contract.

We shall discuss the errors assigned in the order and as the appellant has grouped them. Appellant argues that an affidavit of merits and a demand in writing are both conditions precedent to the granting of a motion for a change of venue, and cites authorities in support of the position taken. The statute relating to the right to change of venue and the waiver thereof if not demanded, reads:

"If the county in which the action is commenced is not the proper county for the trial thereof, the action may nevertheless be tried therein, unless the defendant at the time he answers or demurs files an affidavit of merits, and demands, in writing, that the trial be had in the proper county." R. S. Utah 1933, 104-4-8.

The foregoing section is the revised form as found in the 1933 revision. Some verbal changes have been made so that section 6532, Comp. Laws Utah 1917, differs in wording, but the changes do not in any way affect this proceeding. Section 104-4-8, supra, is found in substantially the same form in many of the codes of procedure, and has been considered in numerous cases. *Cragun* v. *Second District Court*, 83 U. 456, 30 P. (2d) 205.

In the instant case the question is not one of jurisdiction but of venue. "Jurisdiction" as here used refers to the power to decide the issue on its merits; "venue" refers to the place where the cause sued upon should be tried. The change of venue objected to by appellant is based upon an alleged failure to comply on the part of the respondents with the section of the statute above quoted, in that defendants failed to file such an affidavit of merits as is required by the statute. The cause of action being transitory, the district court of Salt Lake county had jurisdiction of the subject-matter. Summons duly and properly served, or appearance by filing a general demurrer, gave the court jurisdiction of the parties.

At the time the demurrer was filed the defendants made demand for change of venue by filing a written motion for "change of venue" and a document entitled "affidavit of merits on motion for change of venue." It is this affidavit which is attacked upon the ground it is not an affidavit of merits required by the statute. A counter affidavit on the part of plaintiff was filed. The issue thereon was duly noticed for hearing. After presentation to the court the motion was taken under advisement. Thereafter the motion was granted and an order entered transferring the cause to Iron county in the Fifth judicial district for trial.

No question is raised by appellant that respondents (defendants) did not, at the time they demurred, file an affidavit and made demand in writing that the trial be had in the proper county. Objection is made in this court, and for the first time raised here, that the affidavit filed on behalf of defendants was fatally defective and therefore was not an affidavit of merits. It is conceded by respondents that the so-called affidavit of merits is not one going primarily to the merits of the cause, but is rather one of merits upon the motion. In some of the particulars stated, the affidavit of merits as to the merits of the cause of action referred to by the statute contains some of the same matters proper to be set out as to the merits of the motion for change

of venue. Appellant made no motion to strike the affidavit for insufficiency or otherwise, made no application for a writ of prohibition or mandate on the ground of depriving him of a speedy remedy, as he might have done if he thought his grounds for opposition to the motion were well taken. *Hale* v. *Barker, Dist. Judge,* 70 Utah 284, 259 P. 928; *Atlas. Acceptance Corporation* v. *Pratt, Dist. Judge,* 85 U. 352, 39 P. (2d) 710, 714. By this we do not mean to say if a proper record is made, the question when properly presented to the trial court may not be reviewed on appeal. *Crookston* v. *Centennial Eureka Min. Co.,* 13 Utah 117, 44 P. 714; *Buckle* v. *Ogden Furniture & Carpet Co.,* 61 Utah 559, 216 P. 684. What we do say is that the affidavit of merits having been filed, the affirmations thereof countered, and the matter having been submitted to the trial court upon the issues thus formed without objection having been made to the form or substance of the affidavit, appellant cannot attack the validity of the trial court's order for the first time in this court for insufficiency of the affidavit. Had the trial court's attention been called to the matter, the affidavit might have been stricken or defendants might have been permitted to amend, or file a supplemental affidavit. The statute is procedural and should be given a liberal construction. *O'Hanion* v. *Great Northern Ry.,* 76 Mont. 128, 245 P. 518. One seeking change of venue must bring himself within the statute. *Danielson* v. *Danielson,* 62 Mont. 83, 203 P. 506.

The order of the trial court does not disclose the ground upon which the order was made nor the reason for making it. If the order was properly made, the reason given, if given, even though erroneous, is not ground for reversing the order.

It is provided by R. S. Utah 1933, 104-4-4, that:

"When the defendant has contracted in writing to perform an obligation in a particular county of the state and resides in another county, an action on such contract obligation may be commenced and tried in the county where such obligation is to be performed or in which the defendant resides."

Under this section upon a written contract the option is with the party bringing the action to choose the county of contracted performance, or the county of residence of the defendant if he resides in a different county from that of agreed performance in which to lodge his venue. Sections 104-4-5 and 104-4-6 relate to transitory causes of action and permit such actions to be brought in the county of residence of the defendant or the county of the place of business if a corporation, or if more than one defendant, in the county in which the principal defendant resides, with provisions relating to corporations and change of venue. In such causes the option of the place or county of bringing the action is with the plaintiff. R. S. Utah 1933, 104-4-7, provides that in all other cases the action must be tried in the county in which the cause of action arose or in the county in which the defendant resides. In such causes the plaintiff has not the option, and if he brings the action in the wrong county he must yield to a change of venue when properly and timely demanded.

If, therefore, from the terms of the contract it is expressly or by necessary implication made to appear on the face thereof that the obligation was to be performed at Salt Lake City, then the plaintiff would have the right to bring the action at Salt Lake City, the place of performance. Mere reference to residence or place of business having no reference to performance is not sufficient.

If the obligation by its terms expressly or by necessary implication was to be performed in Salt Lake county, then a breach of performance would give rise to a cause of action at that place, and as above indicated plaintiff had the choice of place of trial. Does the contract so provide?

The contract sued upon was for a "Talking Picture Reproducing Equipment" to be installed in Parowan, Iron county, Utah. The contract itself is silent as to where it was made. Performance as to the executory part of installation was to

be at Parowan. The place of business of the National Film-fone Corporation is shown to be at Salt Lake City. The contract is also silent as to the place of payment. The contract does not expressly state the place of performance, nor within the four corners of the contract is there any reference to place of performance from which by necessary implication the place of payment may be determined. With such situation the only alternative is that the defendants were entitled to have the action brought at or transferred to the place of their residence.

Mr. Justice Straup in a recent case (*Atlas Acceptance Corporation* v. *Pratt, Dist. Judge et al.,* supra) has fully and carefully analyzed a problem, if not identical at least controlled by the same statutes and principles as the instant case. It is there said the action is one in personam and transitory:

"The court had jurisdiction of subject-matter. It also by process served had jurisdiction of the person of the defendants. The action here, thus, was not a question of jurisdiction either of subject-matter or of person. It was one merely of venue. The action brought by Pickett against the defendants on the undertaking being one in personam and transitory, the venue could be laid in any county, and under the statute service of summons could be had on the defendants in any county of the state. But when an action is brought in a county other than the county of the defendant's residence, he is entitled to a change of venue to the county of his residence, unless the case comes within the exceptions enumerated in the statute, one of which is that when the defendant contracted in writing to perform the obligation in a particular county of the state and resides in another county. In such case to bar the defendant from having the case transferred for trial to the county of his residence it must *expressly or by necessary implication be made to appear* on the face of the contract itself that the obligation was to be performed in the county where the action was brought. Confessedly, there were here no such express terms. Let it be assumed, as is argued, that it may fairly or reasonably be inferred that the automobile, if so adjudged, was to be returned in the county where the action was commenced and where the automobile was taken from the defendant and delivered to the plaintiff in the replevin action; but in default thereof it is not so inferrable that the plaintiff there was also to pay the defendant whatever sum might be recovered against it. But from the language of the undertaking sued on, neither of

such performances in the county where the action was brought is 'necessarily implied.' The term 'implied' and 'implication' often is used in different senses dependent upon the subject-matter concerning which it is used, whether in the construction of statutes, contracts, or wills and the like, in some of which the term is used more flexibly than in others. Ordinarily speaking, it may be said that a fact or thing is implied when it arises out of that which is directly or expressly declared or included or embraced therein or deducible therefrom. But when we have the term 'necessarily implied,' or 'by necessary implication,' the meaning thereof is more restricted or limited. Thus it is said that the term 'necessary implication' is that which leaves no room to doubt, *Whitfield* v. *Garris*, 134 N. C. 24, 45 S. E. 904, and that 'necessary implication' in case of the construction of instruments means not natural necessity, but so strong a probability of intention that an intention contrary to that which is imputed cannot be supposed, *Tuttle* v. *Woolworth*, 74 N. J. Eq. 310, 77 A. 684. So, too, *Calloway* v. *Calloway*, 171 Ky. 366, 188 S. W. 410, L. R. A. 1917A, 1210, and *Galloway* v. *Durham*, 118 Ky. 544, 81 S. W. 659, 111 Am. St. Rep. 300. The Kansas court in *Foster* v. *Board of Education, etc.*, 131 Kan. 160, 289 P. 959, 961, puts the proposition thus: 'A necessary implication does not mean to shut out every other possible or imaginary conclusion, and from which there is no possible escape, but means one leading to such a conclusion as, under the circumstances, a reasonable view impels us to take, the contrary of which would be improbable or absurd.' "

The case of *Silver* v. *Morin*, 74 Mont. 398, 240 P. 825, 826, holds that,

"when a contract does not designate a place of payment of a money obligation, the law makes the same payable where the creditor resides, or where he may be found, and likewise makes it the duty of the debtor to seek the creditor for the purpose of discharging the obligation when due."

The cases generally hold it is the duty of the debtor to seek the creditor. Such duty may give rise to certain presumptions; but when the debtor fails to discharge such duty and the creditor is compelled to resort to the courts, the statutes then must control as to the place of trial. When a written contract does not designate a place of trial and there is nothing therein from which it may be necessarily implied that the parties contracted for a place of performance, notwith-

standing what is said in the case of *Silver* v. *Morin*, supra, the plain terms of the statute control. The matter of the change of venue was submitted to the judge of the district court of Salt Lake county. He made his order thereon. We are of opinion the order transferring the cause to Iron county, the place of residence of defendants, was properly made.

No substantial rights of the parties were affected by the order of change of venue. There is neither showing nor intimation of prejudice. The result reached by the trial court upon the merits of the cause was the result which must have been reached as disclosed by the record, no matter in which jurisdiction tried. Upon the merits of the motion, had the affidavit presented the facts as disclosed by the whole record, the same result would have been reached. That the court may have assigned a reason not applicable to the situation upon either proposition, in view of the well-established principle that the statutes relating to such proceedings must be liberally construed and that the court must in every stage of an action disregard any error or defect in pleadings or proceedings which does not affect the substantial rights of the parties, leaves the appellant no substantial ground to complain of the court's order or judgment.

Coming now to the merits of the cause: As above indicated, fundamentally two questions are presented: (1) Did the filled-in printed contract, referred to as Exhibit One, constitute the entire contract, or was the memorandum, Exhibit B, a part of the original contract? (2) **Was** there a valid assignment of the contract, whatever its terms, by the National Filmfone Corporation to plaintiff?

There are certain provisions in Exhibit One, the filled-in printed form, not necessary to be set out in full, upon which appellant relies as a basis for error alleged to have been committed by the trial court and especially as related to receiving in evidence the additional memorandum, Exhibit B. Those provisions of the contract upon which appellant relies are:

I. "That this contract shall not be regarded as executed until accepted by the Seller at its office in Salt Lake City, or by its agents duly authorized."

II. "Salesmen not authorized to accept contracts for National Filmfone Corporation."

III. "It is understood that the Seller shall not be bound by any agreements or representations not contained in this agreement."

The record discloses, and no contention is made to the contrary, that Exhibit One was signed at the same time and place and by the same two agents on behalf of the National Filmfone Corporation as Exhibit B, claimed to be a part of the original contract. Exhibit B reads as follows:

"National Filmfone Corporation
"58 East First South
"Salt Lake City, Utah March 15th 30.
"Walter C Mitchell and
"Geo A Lowe Jr, of
"Aladdin Theatre
"Parowan Utah.

"In addition to the conditional sales agreement made between the above parties and the National Filmfone Corp on the above date.

"The National Filmfone Corp guarantees Talking Picture device against all defective parts, with the exception of Tubes in amplifier for a period of six months.

"Also guarantee to give satisfactory sound or we will remove the device, and refund all monies with the exception of installation charges.

"National Filmfone Corp.
"[Signed] J. N. MacMeekin
"Witness D. Farquhar."

Exhibit B was made in duplicate. The original was kept by the corporation's agents, presumably to be sent to the corporation with the filled-in printed form of contract. A copy was delivered to the defendants. The original of Exhibit B was not delivered to the corporation.

It has been stated to be the general rule that a traveling salesman has no authority to make a binding contract of sale without the approval or acceptance of the principal,

unless expressly so authorized. Generally the extent
of his authority is to solicit orders and transmit them.
*Tweedie Footwear Corp.* v. *Roberts-Schofield Co.,* 48
Idaho, 777, 285 P. 476. It is also held that when a notice of
countermand is given to the same agent who took the order
before acceptance by his principal, it was the agent's duty
to communicate such notice to his principal, and his failure
to do so did not relieve the principal from the effect of the
notice. *B. T. Moran, Inc.* v. *First Security Corp.,* 82 Utah
316, 24 P. (2d) 384, citing cases.

The filled-in printed form contained the provision:

"It is understood that the Seller shall not be bound by any agreements or representations not contained in this agreement which Purchaser hereby admits he has read and understands."

Because of this, appellant contends that the filled-in
printed form constitutes the contract entered into and that
the written memorandum signed at the same time must be
rejected, and cites a number of cases among which are:
*Landes & Co.* v. *Fallows,* 81 Utah 432, 19 P. (2d) 389; *Tockstein* v. *Pacific Kissel Kar Branch,* 33 Cal. App. 262, 164 P.
906; *Tynan Lumber Co.* v. *W. A. Hammond Co.,* 124 Cal. App.
159, 12 P. (2d) 45; *B. T. Moran, Inc.,* v. *First Security Corp.,*
supra; *Last Chance Ranch Co.* v. *Erickson,* 82 Utah 475, 25
P. (2d) 952. We are of the opinion that these cases correctly
state the law applicable to the facts in each particular case.
Each of these cases is different from the instant case on the
facts and is therefore not applicable.

In the instant case the record establishes that both documents were signed and discussed at the same time. The offer
to purchase made by the defendants was an offer embodying
all of the terms included in the two documents. Whether
the salesmen perpetrated a fraud upon the purchasers
by holding out to them that the two documents constituted the contract which would be accepted by their
principal, or whether they perpetrated a fraud upon their
principal by withholding part of the terms of the offer made

by defendants, their actions were equally effective in preventing the necessary meeting of minds upon the subject-matter to bring into existence a contract binding upon all the parties. When a principal claims the benefits of a contract made by his agent, he cannot repudiate the acts of this agent on the ground such acts were unauthorized. Accepting a contract and claiming the fruits thereof, the principal takes with whatever taint attaches to its origin. *Roseberry* v. *Hart-Parr Co.*, 145 Minn. 142, 176 N. W. 175; *Diehl* v. *Barker*, 137 Kan., 255, 20 P. (2d) 534; *White Sewing Machine Co.* v. *Atkinson & Son*, 126 Ark. 204, 190 S. W. 111.

The trial court did not err in admitting in evidence Exhibit B, above set out. It was as much a part of the negotiations to which the defendants assented as the filled-in printed form. *Bonnett-Brown Sales Service Co.* v. *Denison Morning Gazette* (Tex. Civ. App.) 201 S. W. 1044.

In the case of *White Sewing Machine Co.* v. *Edwards*, 120 Kan. 151, 242 P. 129, an agent whose authority was limited to soliciting orders secured an order from a customer and left with the customer a purported copy of the contract containing terms agreed upon, some of which were omitted from the copy forwarded to his principal. It was held that the document left with the customer was as much evidence of the contract between the parties as the one sent to the seller. That the contract was made up of two separate documents or written on two pieces of paper not attached; both being signed at the same time, should make no difference.

"The intent of the parties is arrived at by taking into consideration all the paper writings relating to the controversy, the condition of the parties, and the purpose for which they were entered into." *Peeler* v. *Peeler*, 202 N. C. 123, 162 S. E. 472, 473.

In the case of *Eastern Mfg. Co.* v. *Brenk*, 32 Tex. Civ. App. 97, 73 S. W. 538, 539, the following is found:

"The instrument referred to was executed at the same time that the defendant signed the printed order for the goods." The agent "having authority to make a contract of sale, it was within the apparent scope of his agency to stipulate in the contract that, if

the property sold was unsatisfactory to the purchaser it could be returned."

To similar effect is *Tracey* v. *Coppage* (Mo. Sup.) 213 S. W. 38. It is not necessary to cite other similar or analogous cases.

The memorandum signed by the salesmen at the same time the other document was signed was as much a part of the transaction between defendants and the corporation represented by the salesmen as if it had been written thereon, and is as binding as were other items added in the blanks of the printed form. The court admitted the writing and from the evidence found there was a variance between the contract sued upon and that proved and dismissed the complaint. Other findings were made, among which were findings relating to the assignment of the contract, and receivership of the corporation. The court concluded that "plaintiff failed to prove the contract sued upon," that the contract was "not an assignable contract," and that plaintiff was not entitled to recover, and that defendants were entitled to a judgment of dismissal of the action. Judgment was entered accordingly.

It is not necessary to discuss whether the agreement was assignable or not, nor whether, if assignable, a valid assignment had been made by the corporation to the plaintiff, as, in any view of the case, this being a law action, the burden being upon the plaintiff he was required to prove his cause by a preponderance of the evidence, and unless he did so the defendants were entitled to a dismissal of the action. There being ample evidence to support the judgment or, put otherwise, there being no sufficient substantial competent evidence to support plaintiff's cause, it should be dismissed. The result reached by the court may not be disturbed.

Judgment is affirmed. Respondents to recover costs.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (concurring).

I concur. The affidavit in support of the motion for a change of venue, instead of going to the merits of the defense, simply stated the grounds for the change of venue. An affidavit of merits where a defendant claims that the action should be brought in the county where he resides must show that he has a meritorious defense because the law seeks to guard against requiring the plaintiff to be transported to another jurisdiction only to find that the defendant has an unmeritorious defense. But no objection having been taken in the lower court, that question is not here reviewable.

The plaintiff contends, however, that even though the affidavit of merits in support of the motion is considered as sufficient, still, under section 104-4-4, Rev. St. 1933, the contract was to be performed in Salt Lake county, and, therefore, the trial court should have denied the motion for a change. The policy of the law generally is to require the plaintiff to wage battle in the county of residence of his antagonist and only in cases where the statute expressly provides are exceptions made. Section 104-4-4 states one of the exceptions, that is, where the defendant has contracted in writing to perform an obligation in a particular county and resides in another county. In such case it may be brought in the county where it is to be performed or in the county where the defendant resides. The section is specific that the defendant must have "contracted in writing to perform an obligation in a particular county." This means that it must expressly appear by the contract itself that it was to be performed in a particular county or by such necessary implication that is equivalent to such express statement in the contract. See *Atlas Acceptance Corp.* v. *Pratt, Dist. Judge,* (Utah) 39 P. (2d) 710. It must appear from the four corners of the contract. The contract in this case recited that the plaintiff was a Utah corporation with its office in Salt Lake City, Utah. The plaintiff contends that since the debtor must pay at the place of business or residence of the

creditor where the contract is otherwise silent in that regard, that this presumption attaches and makes the place of performance Salt Lake county, and that therefore the defendant has "contracted in writing to perform the obligation in a particular county of the state," to wit, Salt Lake county. The contention is untenable because the contract must itself show expressly or by necessary implication that it was to be performed in a particular county. The rule of law that the debtor must tender the money to the plaintiff in the county where the plaintiff resides or has his place of business is for the purpose of determining whose duty it was to seek out the other. The plaintiff would have us take the mere recitation in the contract that the plaintiff's place of business is in Salt Lake county and attach to it the rule of law that the debt is payable there and by that method make it work a result that the defendants have contracted in writing to perform the obligation in Salt Lake county. The statement of the proposition answers itself. The defendant has not so contracted where it requires the aid of a presumption which the law raises for another purpose. In short, the recital plus the presumption does not amount to contracting in writing. The contract must itself expressly so provide or it must appear by necessary implication from the language.

Now as to the merits: The defendants made an offer through an agent which consisted of two contemporaneously drawn instruments. The plaintiff's agent failed to transmit one of the instruments. The principal, therefore, unknowingly accepted what it thought was the offer consisting only of the signed printed form. Since the offer of the defendants consisted of the two instruments, failure to accept the whole of the offer was no acceptance at all. Whether the agent of the plaintiff withheld one of the instruments by mistake, oversight, or fraud makes no difference. It is a simple case of one party making an offer and the other party thinking that he has accepted the offer made by the first party, when in reality he has not because the full offer has not been transmitted; consequently there is no meeting of the minds.

.The plaintiff apparently proved the allegations of his complaint, but the defendants, who denied that the purported contract as set up in the complaint was the contract, prevailed in their denial because when it came their turn they showed that the full offer had not been accepted but that the plaintiff's assignor had mistakenly accepted what it thought was the full offer and that the defendants had permitted it to install the Filmfone apparatus because they were under the impression that the plaintiff's assignor was accepting their full offer when it proceeded with the installation, the defendants not knowing that the agent had withheld part of the offer. The result is that the defendants must prevail in their denial. It is a case of a mutual mistake of fact; that is, both sides thinking that there was a contract in existence but each side being mistaken as to that because each side had a different idea as to what offer had been accepted. Under these circumstances the only thing left for the plaintiff would be to repossess its apparatus, repaying the money paid by the defendants less the rental value of the apparatus during the time the defendants used the same.